UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSE HUERTA, VINICIO MERA, and JOSE FLOREZ,
individually and on behalf of all others similarly situated,

                                       Plaintiffs,

                   -against-

J.D. WORKFORCE, INC., MARAV USA LLC d/b/a
BINGO WHOLESALE, HAMWATTIE BISSOON,
STEVEN DEANE, and DAVID WEISS,

                                  Defendants.
------------------------------------------------------------------X

Civil Action No.

COMPLAINT

       Plaintiffs Jose Huerta, Vinicio Mera, and Jose Florez (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, J.D. Workforce, Inc. ("JDW"), Marav USA LLC d/b/a Bingo Wholesale ("Bingo Wholesale"), Hamwattie Bissoon, Steve Deane, and David Weiss (together, "Defendants"), respectfully allege as follows:

## I. Nature of Action, Jurisdiction, and Venue

       1.     This is an action seeking equitable and legal relief on behalf of all Plaintiffs for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA") and the New York Labor Law ("NYLL") §§ 190 *et seq.* and 650 *et seq.*; and on behalf of Huerta for violations of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL")[1].

       2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

---

[1] Huerta is in the process of filing a charge of discrimination with the EEOC. Upon issuance of a Notice of Right to Sue, Huerta will seek to amend the complaint to add claims under Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e *et seq.*

3.      This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state and city law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## II. Parties

5.      Plaintiffs are individuals residing in the State of New York.

6.      At all relevant times, Plaintiffs were covered employees of Defendants within the meaning of the FLSA, the NYLL, the NYSHRL, and the NYCHRL.

7.      While employed with Defendants, Plaintiffs were regularly engaged in interstate commerce.

8.      JDW is a domestic corporation with its principal place of business located at 10460 Lefferts Blvd., Queens, New York 11419.

9.      JDW is a staffing and payroll agency that provides a suite of services to businesses in New York, New Jersey, and Pennsylvania, including coordinating payroll services and placement of workers to supplement its clients' core workforce.

10.      Bingo Wholesale is a Delaware limited liability company authorized to do business pursuant to the laws of the State of New York.

11.     Bingo Wholesale is a bulk supermarket, which offers its customers a variety of products, including groceries, dairy products, baked goods, meats, fruits and vegetables, frozen foods, beverages, and alcoholic beverages.

12.     Bingo Wholesale has four locations across New York, including a location at 44 Spring Valley Market Place, Spring Valley, New York 10977 ("Monsey Location"), where Plaintiffs worked during the relevant period, and another location at 1245 61st Street, Brooklyn New York 11219 ("Brooklyn Location").

13.     Bissoon, Deane, and Weiss are individuals residing, upon information and belief, in the state of New York.

14.     At all relevant times, Bissoon and Deane were and still are officers, directors, shareholders, owners, and/or persons in control of JDW, who exercise significant control over JDW's operations; have the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

15.     At all relevant times, Weiss was and still an officer, director, shareholder, owner, and/or person in control of Bingo Wholesale, who exercises significant control over Bingo Wholesale's operations; has the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

16.     Defendants are joint employers who jointly managed, supervised, hired, fired, and controlled Plaintiffs' compensation, and are jointly and severally liable in this matter.

17.     At all relevant times, Defendants were responsible for setting Plaintiffs' schedules, determining their day-to-day activities, and supervising their performance.

3

18.     At all relevant times, Defendants had the power to discipline and terminate Plaintiffs.

19.     At all relevant times, Defendants were responsible for compensating Plaintiffs.

20.     Defendants exercised sufficient control over Plaintiffs' day-to-day operations to be considered their employers for the purposes of the FLSA and NYLL.

21.     At all relevant times, Defendants employed more than four persons.

22.     Defendants are covered employers within the meaning of the FLSA, the NYLL, the NYSHRL, and the NYCHRL.

23.     Defendants operate in interstate commerce, and upon information and belief, their revenues are in excess of the minimum required to fall within the jurisdiction of the FLSA.

24.     Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

25.     The First Cause of Action in this Complaint, which arises out of the FLSA, is brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed by Defendants since the date three (3) years prior to the filing of the Complaint and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

26.     The FLSA Collective Plaintiffs consist of no less than forty (40) similarly situated current and former cleaners and stocking clerks employed by Defendants, who work or worked in excess of forty (40) hours per week and are victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime compensation and other pay.

27.     As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a

pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to pay employees the applicable overtime rates for all hours worked in excess of forty (40) per week.

28.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

29.     Defendants' unlawful conduct has been intentional, willful and in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

30.     The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, and are readily identifiable and locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

### IV. Rule 23 Class Allegations

31.     Plaintiffs bring the Second through Fifth Causes of Action under the NYLL on behalf of themselves and similarly situated persons who were employed by Defendants since the date six (6) years prior to the filing of this Complaint (the "Class Period") pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23.

32.     All said persons are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

33.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts from which to calculate that number are presently within the sole control of Defendants, upon information and belief, there are no less than forty (40) members in the Class.

34.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' company-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

35.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests adverse to the Class. Plaintiffs are represented by attorneys who are experienced and competent in employment and wage and hour litigation and class action litigation and have many times previously represented plaintiffs in wage and hour cases.

36.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants.

37.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

38.     Because the losses, injuries, and damages suffered by each of the individual Class members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

39.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

40.     The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

41.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

a.   Whether Defendants employed Plaintiffs and the Class within the meaning of the NYLL;

b.   Whether Defendants failed to pay Plaintiffs and the Class overtime compensation for all hours worked in excess of forty (40) hours per workweek;

c.   Whether Defendants unlawfully failed to timely pay Class members their earned wages, in violation of NYLL § 191(1)(a)(i);

d.   Whether Defendants unlawfully failed to provide Class members with payroll notices at the start of their employment, or at any point thereafter, in violation of NYLL § 195(1);

e.   Whether Defendants unlawfully failed to provide Class members, with each wage payment, a statement listing their rates of pay and basis thereof and anything otherwise required by NYLL § 195(3);

f.   Whether Class members are entitled to damages, and if so, the means of measuring such damages;

g.   Whether Defendants are liable for the Class members' attorneys' fees and costs; and

h.   Whether Defendants are liable for liquidated damages.

## V. Factual Allegations

### *Huerta*

#### *Wage and Hour Violations*

42.     From on or around October 1, 2020 until on or around September 12, 2022, Defendants employed Huerta as a stocking clerk at the Monsey Location.[2]

43.     As a stocking clerk, Huerta's job duties included, *inter alia*, breaking down and recycling empty boxes; discarding waste; emptying trashcans; mopping and buffing floors; scrubbing and disinfecting restrooms; cleaning shelves; removing spoiled product from retail display; and notifying Bingo Wholesale's supervisors of damaged or expired items and inventory levels.

44.     Throughout his employment, Huerta regularly worked six (6) days per week, as follows: Mondays, Wednesdays, and Fridays from approximately 6:00 a.m. until approximately 4:00 p.m.; Tuesdays and Sundays from approximately 6:00 a.m. until approximately 11:00 p.m.; and Thursdays from approximately 6:00 a.m. until approximately 1:00 a.m., with a daily 30-minute lunch break and an additional daily 20-minute rest break, for a total of approximately seventy-eight (78) hours per week.

45.     Throughout Huerta's employment, Defendants required Huerta to record his actual work hours on handwritten timesheets.

46.     From on or around October 1, 2020 until on or around September 12, 2022, except during the period Huerta did not work for Defendants due to his foot injury, Defendants paid Huerta at a rate of $17.00 per hour for all hours worked per week, including all hours worked over forty (40) per week.

---

[2] From on or around February 28, 2022 until on or around September 12, 2022, Huerta did not perform work for Defendants as a result of a work-related injury to his left foot. During that time, he received workers' compensation.

*Disability Discrimination and Failure to Accommodate*

47.     On or around February 28, 2022, Huerta sustained a foot and ankle fracture and ligament tear when he crashed against shelving units at the Monsey Location while operating a warehouse lift.

48.     Following the accident, Huerta had to undergo multiple surgeries and lengthy physical therapy sessions that required months of recovery, severely restricting his ability to work from February 28, 2022, until on around August 28, 2022.

49.     On or around August 29, 2022, Doctor Hyun-Ho Choi granted Huerta medical clearance to return to work with certain restrictions. The medical release letter indicated that Huerta needed to wear a controlled ankle movement boot at all times when ambulating, recommended that he refrain from extensive walking, and suggested that if Huerta needed to walk more than 5 minutes at a given time, he should have breaks.

50.     The same day, Huerta sought interpretation services from an English-speaking acquaintance, Simon (last name unknown), to translate a conversation between Huerta and Deane.

51.     With Simon's help, Huerta advised Deane that he received medical clearance to return to work and requested that Deane read Dr. Choi's letter to consider the medical accommodations that the doctor had recommended.

52.     Deane refused to read the doctor's letter and stated that, given Huerta's prolonged absence from the job, he no longer had a position with Defendants.

53.     Simon explained to Deane that Huerta's termination could constitute a discriminatory action and asked that Deane reconsider his decision. Simon also informed Huerta that Deane's actions were likely discriminatory.

54.     Thereafter, Deane reviewed Huerta's medical release letter, and stated that he needed to consult with another party before making a final determination.

55.     On or around September 9, 2022, Huerta's wife, Elvia Borja, who was also an employee of Defendants at the Monsey Location, delivered a new medical release letter to Deane, indicating Huerta's ability to work if granted reasonable accommodations.

56.     On or around September 12, 2022, Deane texted Huerta reiterating that he did not have a job opening for him at the Monsey Location. However, Deane offered to transfer Huerta to the Brooklyn Location.

57.     Huerta expressed concern as to Deane's offer to relocate him to a jobsite that was approximately two and one-half (2.5) to three (3) hours away from Huerta's home, which would require a roundtrip total of five (5) to six (6) hours of traveling per day, and which conflicted with Huerta's medical instructions to refrain from driving for extended periods. The relocation would also impose a significant increase on his travel expenses, and thus a proportional reduction of his wages.

58.     Throughout Huerta's medical leave, both Ms. Borja and his co-workers informed him that his position at the Monsey Location remained vacant and that JDW had extended other employees' shifts to make up for his absence.

59.     As the relocation would require Huerta to spend an inordinate amount of time commuting, would reduce his take-home pay, and would conflict with medical advice, Huerta rejected the position at the Brooklyn Location.

60.     Rather than returning Huerta to the open position at the Monsey Location, Defendants terminated his employment.

### *Mera*

61.     From on or around October 2, 2020 until on or around March 14, 2022, Defendants employed Mera as a cleaner at the Monsey Location.

62.     As a cleaner, Mera's job duties included, *inter alia*, breaking down and recycling empty boxes; discarding waste; emptying trashcans; mopping and buffing floors; scrubbing and disinfecting restrooms; cleaning shelves; removing spoiled product from retail display; and notifying Bingo Wholesale's supervisors and managers of damaged or expired items and inventory levels.

63.     Throughout his employment, Mera regularly worked six (6) days per week, as follows: Sundays through Fridays from approximately 6:00 a.m. until approximately 4:00 p.m., with a daily 30-minute break, for a total of approximately fifty-seven (57) hours worked per week.

64.     Throughout Mera's employment, Defendants required Mera to record his actual work hours on handwritten timesheets.

65.     From on or around October 2, 2020 until on or around October 14, 2021, Defendants paid Mera at a rate of $12.50 per hour for all hours worked per week, including all hours worked over forty (40) per week.

66.     From on or around October 15, 2021 until on or around March 14, 2022, Defendants paid Mera at a rate of $14.00 per hour for all hours worked per week, including all hours worked over forty (40) per week.

### *Florez*

67.      From on or around January 7, 2022 until on or around July 1, 2022, Defendants employed Florez as a cleaner at the Monsey Location.

68.     As a cleaner, Florez's job duties included, *inter alia*, unloading products from trucks; organizing and labeling fruits, vegetables, and frozen inventory; cleaning display shelves; removing spoiled product from retail display; reporting damaged or expired items to Bingo Wholesale's supervisors; and notifying Bingo Wholesale's supervisors and managers of inventory levels.

69.     Throughout his employment, Florez regularly worked six (6) days per week, as follows: Mondays from approximately 6:00 a.m. until approximately 10:00 p.m.; Tuesdays from approximately 6:00 a.m. until approximately 3:00 p.m.; Wednesdays from approximately 6:00 a.m. until approximately 12:00 a.m.; Thursdays from approximately 6:00 a.m. until approximately 5:00 p.m.; Fridays from approximately 6:00 a.m. until approximately 4:00 p.m.; and Sundays from approximately 6:00 a.m. until approximately 4:00 p.m., with a daily 30-minute break, for a total of approximately seventy-one (71) hours worked per week.

70.     Throughout Florez's employment, Defendants required Florez to record his actual work hours on handwritten timesheets.

71.     From on or around January 7, 2022 until on or around July 1, 2022, Defendants paid Florez at a rate of $14.00 per hour for all hours worked per week, including all hours worked over forty (40) per week.

<u>*All Plaintiffs*</u>

72.     At all relevant times, Plaintiffs, the FLSA Collective Plaintiffs, and the Class members were non-exempt employees pursuant to the FLSA and the NYLL, and were entitled to overtime compensation.

73.     Despite routinely working in excess of forty (40) hours per week, Plaintiffs, the FLSA Collective Plaintiffs, and the Class members were not paid overtime compensation at a rate

of one and one-half (1.5) times their regular hourly rate of pay or the applicable minimum wage rate, whichever is greater, for the hours they worked in excess of forty (40) per week.

74.     Defendants further failed to furnish to Plaintiffs and the Class members a payroll notice at the time of their hire, or at any time thereafter, containing their rates of pay, the designated payday, or other information required by NYLL § 195(1).

75.     Defendants also failed to furnish to Plaintiffs and the Class members, with each wage payment, an accurate statement listing their regular and overtime rates of pay and the number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

76.     Defendants violated federal and state law by willfully failing to pay Plaintiffs, the FLSA Collective Plaintiffs, and the Class members overtime compensation; failing to timely pay Plaintiffs and the Class members; failing to provide Plaintiffs and the Class members with the required payroll notices and wage statements; and by discriminating against Huerta and failing to accommodate his disability.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
*(Overtime Violations under the Fair Labor Standards Act)*

77.     Plaintiffs, individually and on behalf of the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

78.     Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

79.     Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

80.     Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) in a week.

81.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

82.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to liquidated damages.

83.     Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION
### ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE CLASS
*(Overtime Violations under the NYLL)*

84.     Plaintiffs, individually and on behalf of the Class members, repeat and reallege all prior allegations set forth above.

85.     Pursuant to the applicable provisions of the NYLL, Plaintiffs and the Class members were entitled to overtime wages of one and one-half (1.5) times their regular hourly rate

of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

86.     Plaintiffs and the Class members regularly worked in excess of forty (40) hours per week during their employment with Defendants.

87.     Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs and the Class members overtime wages of one and one-half (1.5) times their regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

88.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class members the required overtime wages, Plaintiffs and the Class members have been damaged and are entitled to recover from Defendants all overtime wages due, along with reasonable attorneys' fees, interest, and costs.

89.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the Class members are entitled to liquidated damages.

90.     Judgment should be entered in favor of Plaintiffs and the Class members and against Defendants on the Second Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE CLASS
*(Failure to Timely Pay Wages in Violation of the NYLL)*

91.     Plaintiffs, individually and on behalf of the Class members, repeat and reallege all prior allegations.

92.     Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiffs and the Class members were entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

93.     During the relevant time period, Defendants failed to timely pay Plaintiffs and the Class members all their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

94.     Plaintiffs and the Class members regularly worked in excess of forty (40) hours per work during their employment with Defendants.

95.     Throughout the relevant time period, Defendants failed to pay Plaintiffs and the Class members all wages earned by Plaintiffs and the Class members, including overtime wages earned for all hours worked in excess of forty (40) per week, in violation of NYLL § 191(1)(a)(i).

96.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class members in accordance with NYLL § 191(1)(a)(i), Plaintiffs and the Class members have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs

97.     Judgment should be entered in favor of Plaintiffs and the Class members and against Defendants on the Third Cause of Action in the amount of their respective unpaid wages, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFFS INDIVIDUALLY, AND THE CLASS
*(Failure to Provide Payroll Notices under the NYLL)*

98.     Plaintiffs, individually and on behalf of the Class members, repeat and reallege all prior allegations set forth above.

99.     Throughout the relevant time period, Defendants failed to furnish to Plaintiffs and the Class members a notice containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; and other information required by NYLL § 195(1).

100.    As Defendants failed to provide Plaintiffs and the Class members with payroll notices as required by NYLL § 195(1), Plaintiffs and the Class members are entitled to liquidated damages of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

101.    Judgment should be entered in favor of Plaintiffs and the Class members and against Defendants on the Fourth Cause of Action in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

## AS AND FOR A FIFTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFFS INDIVIDUALLY, AND THE CLASS
*(Failure to Provide Wage Statements under the NYLL)*

102.    Plaintiffs, individually and on behalf of the Class members, repeat and reallege all prior allegations set forth above.

103.    Throughout the relevant time period, Defendants failed to furnish to Plaintiffs and the Class members, with each wage payment, a statement listing: rate or rates of pay and basis thereof; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

104.     As Defendants failed to provide Plaintiffs and the Class members with wage statements as required by NYLL § 195(3), Plaintiffs and the Class members are entitled to liquidated damages of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

105.     Judgment should be entered in favor of Plaintiffs and the Class members and against Defendants on the Fifth Cause of Action in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

## AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF HUERTA
*(New York State Human Rights Law, Executive Law § 290 et seq.)*
*(Disability Discrimination and Failure to Accommodate)*

106.     Plaintiffs repeat and reallege all prior allegations set forth above.

107.     The NYSHRL requires a covered employer to engage in an interactive process with disabled employees and to provide disabled employees with reasonable accommodations.

108.     Huerta has a "disability" as defined by the NYSHRL.

109.     At all relevant times herein, Defendants had notice and were aware of Huerta's disability.

110.     Huerta's disability did not prevent him from performing in a reasonable manner the activities involved in his position as a stocking clerk.

111.     Huerta requested reasonable accommodations and attempted to engage in the interactive process with Defendants in good faith.

112.     Defendants failed to engage in a good faith interactive process with Huerta, denied his requested reasonable accommodations, and discriminated against Huerta because of his known disability.

19

113.    Defendants subjected Huerta to adverse employment actions which non-disabled employees were not subjected to.

114.    As a direct and proximate result of Defendants' discrimination against Huerta and failure to provide reasonable accommodations, Huerta has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits.

115.    As a direct and proximate result of Defendants' discrimination against Huerta and failure to provide reasonable accommodations, Huerta has suffered emotional distress, pain, and suffering.

116.    Judgment should be entered in favor of Huerta and against Defendants on the Sixth Cause of Action for all compensatory, emotional, physical, and liquidated damages, if applicable, along with lost pay, front pay, and any other damages permitted by law in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for relief as follows:

a)  on the First Cause of Action on behalf of Plaintiffs and the FLSA Collective Plaintiffs for all overtime wages due, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

a)  on the Second Cause of Action on behalf of Plaintiffs and the Class members for all overtime wages due, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

b)  on the Third Cause of Action on behalf of Plaintiffs and the Class members for all unpaid wages due, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

c)  on the Fourth Cause of Action on behalf of Plaintiffs and the Class members for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorney fees in an amount to be determined by this Court;

d)  on the Fifth Cause of Action on behalf of Plaintiffs and the Class members for liquidated damages in the amount of $250.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorney's fees in an amount to be determined by this Court;

e)  on the Sixth Cause of Action on behalf of Huerta for all compensatory, emotional, physical, and liquidated, damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, and any other damages permitted by law in an amount to be determined by this Court;

f)  interest;

g)  costs and disbursements; and

h)  such other and further relief as is just and proper.

Dated:  New York, New York
June 26, 2023

KATZ MELINGER PLLC

By: */s/ Katherine Morales*
Katherine Morales, Esq.
370 Lexington Avenue, Suite 1512
New York, New York 10017
Telephone: (212) 460-0047
Facsimile: (212) 428-6811
kymorales@katzmelinger.com
*Attorneys for Plaintiffs*