UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
JOSE HUERTA, VINICIO MERA, JOSE FLOREZ, and ELVIA
BORJA, individually and on behalf of all others similarly situated,

                              Plaintiffs,

                          -against-

J.D. WORKFORCE, INC., MARAV USA, LLC (D/B/A BINGO
WHOLESALE), HAMWATTIE BISSOON, STEVEN DEANE,
and DAVID WEISS,

                             Defendants.
--------------------------------------------------------------------------------X

Civil Action No.
7:23-cv-05382


# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


Katherine Morales
Katz Melinger PLLC
370 Lexington Avenue, Suite 1512
New York, New York 10017
(212) 460-0047

Table of Contents

Table of Authorities ................................................................................................ ii

PRELIMINARY STATEMENT .............................................................................. 1

LEGAL STANDARD.............................................................................................. 2

I.  Plaintiffs Adequately Pleaded Their FLSA Claims in the Amended Complaint...................... 2

    A.  Plaintiffs State Claims for Wage-and-Hour Violations........................................ 2

    B. JDW Defendants' Case Law Does Not Support Dismissal of Plaintiffs' Overtime Claims  7

    C.  Plaintiffs Sufficiently Alleged That Bissoon and Deane Were Their Employers ............ 10

II.  Huerta's ADA Claim Must Not Be Dismissed Because Huerta Followed Administrative Procedures Under Applicable Law And Within This District ...................................... 14

    A. Section 2000e and 29 C.F.R. § 1601.28(a)(2) Permit Early Right to Sue Letters ............ 14

    B. The Case Law Relied on By JDW Defendants Does Not Support Dismissal of Huerta's ADA Claim ............................................................................................ 19

    C. The Dismissal of Huerta's ADA Claim Would Be Inequitable ........................................ 20

III.  To the Extent the Court Deems Plaintiffs' Pleadings Deficient, the Court Should Grant Plaintiffs Leave to Amend the Amended Complaint ................................................... 21

IV.  The Court Has Supplemental Jurisdiction Over Plaintiffs' NYLL and NYSHRL Claims ............................................................................................ 24

CONCLUSION.......................................................................................................... 25

## Table of Authorities

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006)................................................................ 24

*Apolinar v. R.J. 49 Rest., LLC,*
    No. 15 Civ. 8655 (KBF), 2016 WL 2903278 (S.D.N.Y. May 18, 2016) ................. 12, 13

*Areu v. Fox News Network, LLC,*
    No. 20 Civ. 8678 (RA), 2021 WL 4124226 (S.D.N.Y. Sept. 9, 2021)........................... 15

*Arroyo v. WestLB Admin., Inc.,*
    213 F.3d 625 (2d Cir. 2000)................................................................ 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................ 2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................ 2

*Brain v. Execu-Search Grp., LLC,*
    No. 22 Civ. 8219 (MKV), 2024 WL 838085 (S.D.N.Y. Feb. 28, 2024) ........................... 5

*Briarpatch Ltd. v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004)................................................................ 24

*Carter v. Dutchess Cmty. Coll.,*
    735 F.2d 8 (2d Cir. 1984)................................................................ 10, 11, 12

*Chance v. Armstrong,*
    143 F.3d 698 (2d Cir. 1998)................................................................ 2

*Chevron U.S.A, Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 937 (1984)........................................................................ 16

*Commodari v. Long Island Univ.,*
    89 F. Supp. 2d 353 (E.D.N.Y. 2000) ................................................... 20, 21

*Davis v. Ching Yi Cheng,*
    No. 16 Civ. 1354, 2017 WL 6622545 (E.D.N.Y. Dec. 28, 2017) .................................... 13

*Dejesus v. HF Mgmt. Servs., LLC,*
    726 F.3d 85 (2d Cir. 2013)................................................................ 3, 6, 7, 8, 9

*Di Simone v. CN Plumbing, Inc.,*
    No. 13 Civ. 5088 (JG), 2014 WL 1281728 (E.D.N.Y. Mar. 31, 2014) ............................ 8

*Eckhart v. Fox News Network, LLC,*
    No. 20 Civ. 5593 (RA), 2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021)........................... 15

*Fallon v. 18 Greenwich Avenue, LLC,*
    No. 19 Civ. 9579 (MKV), 2021 WL 1105066 (S.D.N.Y. Mar. 23, 2021) .................. 8, 23

*Figueira v. Black Ent. Television, Inc.*,
    944 F. Supp. 299 (S.D.N.Y. 1996) ..................................................................... 15, 18, 20

*Forman v. Davis*,
    371 U.S. 178 (1962) ............................................................................................ 22, 23

*Fort Bend Cnty., Texas v. Davis,*
    139 S. Ct. 1843 (2019) ............................................................................................. 19

*Germain v. Nielsen Consumer LLC*,
    655 F. Supp. 3d 164 (S.D.N.Y. 2023) ............................................................ 14, 15, 16, 19

*Gibb v. Tapestry, Inc.*,
    No. 18 Civ. 6888 (LAP), 2018 WL 6329403 (S.D.N.Y. Dec. 3, 2018) ......................... 19

*Gisomme v. HealthEx, Corp.*,
    No. 13 Civ. 2541 (LDW) (WDW), 2014 WL 2041824 (E.D.N.Y. May 15, 2014) ........... 9

*Harris v. City of N.Y.,*
    186 F.3d 243 (2d Cir. 1999) ...................................................................................... 2

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ........................................................................................ 2

*Hernandez v. Premium Merch. Funding One, LLC*,
    No. 19 Civ. 1727 (WHP), 2020 WL 3962108 (S.D.N.Y. July 13, 2020) ............. 15, 18, 19

*Herrera v. Comme des Garcons, Ltd.*,
    84 F.4th 112 (2d Cir. 2023) ................................................................................. 5, 6, 7

*Huang v. Gruner + Jahr USA Publ'g*,
    No. 99 Civ. 5058 (DLC), 2000 WL 640660 (S.D.N.Y. May 17, 2000) ......................... 15

*Hussein v. Pierre Hotel*,
    No. 99 Civ. 2715 (DC), 2000 WL 776920 (S.D.N.Y. June 14, 2000) ........................... 15

*Imbarrato v. Banta Management Services, Inc.*,
    No. 18 Civ. 5422 (NSR), 2020 WL 1330744 (S.D.N.Y. Mar. 20, 2020) ....................... 10

*Irizarry v. Catsimatidis*,
    722 F.3d 99 (2d Cir. 2013) ....................................................................................... 10

*Jianjun v. 2425 Broadway Chao Restaurant, LLC*,
    No. 16 Civ. 5735 (GHW), 2017 WL 2600051 (S.D.N.Y. June 15, 2017) ...................... 23

*Jung v. Gina Grp.*, LLC,
    No. 19 Civ. 8624 (MKV), 2020 WL 3640048 (S.D.N.Y. July 6, 2020) .......................... 6

*Liu v. New York Neuromodulation Med., P.L.L.C.*,
    No. 20 Civ. 5000 (JPO), 2021 WL 3406373 (S.D.N.Y. Aug. 4, 2021) ........................... 5

*Lundy v. Cath. Health Sys. of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013) ............................................................................ 3, 6, 7, 8, 9

*Mahoney v. Amekk Corp.*,
   No. 14 Civ. 4131 (ENV) (VMS), 2016 WL 6585810 (E.D.N.Y. Sept. 30, 2016)...... 11, 12

*Maldonado Juarez v. Butterfield Catering, Inc.*,
   No. 20 Civ. 4537 (LJL), 2020 WL 6945944 (S.D.N.Y. Nov. 25, 2020) .......................... 8

*Martinez v. Triumph Constr. Corp.*,
   No. 21 Civ. 4137 (JPO), 2022 WL 861847 (S.D.N.Y. Mar. 22, 2022) ............................ 5

*Martini v. Fed. Nat.'l Mortg. Ass'n*,
   178 F.3d 1336 (D.C. Cir. 1999).......................................................................... 14, 16, 19

*McGrath v. Nassau Health Care Corp.*,
   217 F. Supp. 2d 319 (E.D.N.Y. 2002) ............................................................................ 21

*Mendez v. U.S. Nonwovens Corp.*,
   2 F. Supp. 3d 442 (E.D.N.Y. 2014) .................................................................................. 8

*Mills v. Jefferson Bank E.*,
   559 F. Supp. 34 (D. Colo. 1983)..................................................................................... 19

*Montoya v. Valencia County*,
   872 F. Supp. 904 (D.N.M. 1994) .................................................................................... 19

*Mwangi v. Passbase, Inc.*,
   No. 21 Civ. 6728 (ER), 2022 WL 2133734 (S.D.N.Y. June 14, 2022) ........................... 15

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
   723 F.3d 192 (2d Cir. 2013)............................................................................ 3, 6, 7, 8, 9

*New York v. Holiday Inns, Inc.*,
   656 F. Supp. 675 (W.D.N.Y. 1984) ................................................................................ 19

*Nodelman v. Gruner & Jahr USA Publ'g*,
   No. 98 Civ. 1231 (LMM), 2000 WL 502858, at *6 (S.D.N.Y. Apr. 26, 2000)............... 15

*Occidental Life Ins. Co. of California v. E.E.O.C.*,
   432 U.S. 355 (1977)..................................................................................................... 19, 20

*Paleja v. KP NY Operations, LLC*,
   No. 21 Civ. 286 (AT), 2022 WL 364007 (2d Cir. 2022)................................................ 8, 9

*Palumbo v. Lufthansa German Airlines*,
   No. 98 Civ. 5005 (HB), 1999 WL 540446 (S.D.N.Y. July 26, 1999) ............................. 15

*Rahman v. Red Chili Indian Café, Inc.*,
   No. 17 Civ. 5156 (RA), 2021 WL 2003111 (S.D.N.Y. May 19, 2021)........................... 11

*S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*,
   608 F.2d 28 (2d Cir. 1979)............................................................................................. 23

*Saulsbury v. Wismer & Becker, Inc.*,
   644 F.2d 1257 (9th Cir. 1980) ....................................................................................... 14

*Savor Health, LLC v. Day*,
    No. 19 Civ. 9798 (RA), 2022 WL 912236 (Mar. 29, 2022) ............................................ 11

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011).............................................................................................. 25

*Sims v. Trus Joist MacMillan*,
    22 F.3d 1059 (11th Cir. 1994) ..................................................................................... 14, 17

*Walker v. United Parcel Serv., Inc.*,
    240 F.3d 1275 (10th Cir. 2001) ............................................................................ 14, 17, 18

*Weise v. Syracuse Univ.*,
    522 F.2d 397 (2d Cir. 1975)................................................................................................ 20

*Williams v. New York City Dep't of Health & Mental Hygiene*,
    299 F. Supp. 3d 418 (S.D.N.Y. 2018)................................................................................ 25

*Winfield v. Babylon Beauty School of Smithtown, Inc.*,
    89 F. Supp.3d 556 (E.D.N.Y. 2015) .................................................................................. 11

*Yong Kui Chen v. Wai Café Inc.*,
    No. 10 Civ. 7254 (JCF), 2017 WL 3311228 (S.D.N.Y. Aug. 2, 2017) ............................ 25

*Zhong v. August Corp.*,
    498 F. Supp.2d 625 (S.D.N.Y. 2007)................................................................................. 23

**Statutes**

26 U.S.C. § 1331 ...................................................................................................................... 24

28 U.S.C. § 1367 ...................................................................................................................... 24

42 U.S.C. § 2000e-5 .................................................................................................. 14, 15, 16, 17

42 U.S.C. § 12101 .................................................................................................................... 24

29 C.F.R. § 778.109 ................................................................................................................... 9

29 C.F.R. § 1601.28 ............................................................................................ 14, 16, 17, 18, 20

**Rules**

Fed. R. Civ. P.12........................................................................................................................ 1, 2

Fed. R. Civ. P.15.................................................................................................................. 2, 22, 23

**Other**

118 CONG. REC. 7168 (1972)................................................................................................ 17

H.R. Rep. No. 92–238 (1971) ................................................................................................. 17

## PRELIMINARY STATEMENT

Plaintiffs Jose Huerta, Vinicio Mera, Jose Florez, and Elvia Borja submit this Memorandum of Law in opposition to the motion to dismiss filed by J.D. Workforce, Inc. ("JDW"), Hamwattie Bissoon, and Steven Deane (Bissoon and Deane are referred to as "Individual Defendants," and JDW and the Individual Defendants are referred to as "JDW Defendants") pursuant to Federal Rules of Civil Procedure Rule 12(b)(6)[1] ("the Motion").[2]

The facts are set forth in the amended complaint, Dkt. No. 30 (the "Amended Complaint"), and need not be reiterated at length herein, except as necessary to refute JDW Defendants' assertions. The procedural background is set forth in JDW Defendants' memorandum of law in support of their motion to dismiss ("Def. Memo"). *See* Def. Memo at pp. 2-3.

As argued more fully below, Plaintiffs sufficiently alleged facts to withstand the Motion. Plaintiffs properly plead claims for overtime wages under the FLSA and NYLL by alleging specific weeks in which they worked more than 40 hours, providing detailed schedules and approximate total weekly hours throughout their respective employments, as well as the hourly rates of pay they were paid for all hours worked. JDW Defendants' argue that Plaintiffs' failed to plead employment by the Individual Defendants for the first time on the Motion despite this Court's Individual Rules of Practice. Nevertheless, Plaintiffs properly allege employment by the Individual Defendants by expressly identifying them as their employers and describing all the ways in which they exercised control over Plaintiffs' employment. Huerta also properly exhausted his administrative remedies as to his ADA claim, despite the early issuance of his right to sue letters. JDW Defendants' request that Huerta's ADA claim be remanded back to the Equal Employment

---

[1] JDW Defendants' notice of motion states that the motion is made pursuant to FRCP 12(b)(1) and FRCP 12(b)(6); however, the memorandum of law in support of the motion does not engage in any analysis of FRCP 12(b)(1).
[2] Defendants Marav USA LLC and David Weiss filed an Answer to the Amended Complaint on October 31, 2023. Dkt. No. 32.

Opportunity Commission ("EEOC") runs contrary to the significant weight of authority, both in this Court and across the country, and the intent of Congress for discrimination claims to be processed expeditiously. Notwithstanding the foregoing, if this Court deems it appropriate to grant any portion of the Motion, Plaintiffs respectfully seek leave to file a Second Amended Complaint pursuant to FRCP 15(a)(2), which provides leave to amend should freely be granted.

## LEGAL STANDARD

Pursuant to FRCP 12(b)(6), a court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That burden is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, "[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999). Plaintiffs have alleged sufficient facts to withstand a motion to dismiss.

## ARGUMENT

I.  **Plaintiffs Adequately Pleaded Their FLSA Claims in the Amended Complaint**

A.  Plaintiffs State Claims for Wage-and-Hour Violations

"[I]in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40

hours. *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). To satisfy this standard, plaintiffs are not required to "keep careful records and plead their hours with mathematical precision"; however, the standard requires that plaintiffs provide "complaints with sufficiently developed factual allegations." *Dejesus*, 726 F.3d at 90; *see also*, *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("[t]o plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than 40 hours in a given week"). Since "[t]he relevant portions of New York Labor Law do not diverge from the requirements of the FLSA," the analysis of a plaintiff's FLSA claims applies equally to claims brought under the NYLL. *Dejesus,* 726 F.3d at 89 (citations omitted).

JDW Defendants argue that Plaintiffs failed to sufficiently plead overtime claims under the FLSA and NYLL because Plaintiffs did not "allege a single workweek where they worked over forty (40) hours and that there was uncompensated time in excess of forty (40) hours" and alleged generally that they "worked a total of approximately 35.5 to 78 hours per week without identifying any specific week as required to state a claim under the FLSA." Def. Memo at pp. 5-6.

Contrary to JDW Defendants' assertions, the Amended Complaint does not merely contain "conclusory allegations as to the hours Plaintiffs generally worked." Rather, the Amended Complaint details the specific days each plaintiff worked, the approximate times each plaintiff started and ended work each day, and the approximate total number of hours Plaintiffs worked each week throughout their respective employments. Amended Complaint at ¶¶ 46, 66, 72, 77-83. The Amended Complaint further alleges that Plaintiffs were paid at fixed regular hourly rates of

pay for all of the hours they worked, including all hours worked over 40 per week, and that they were denied overtime premiums for their overtime hours. *Id*. at ¶¶ 48, 68-69,74, 85-86, 88,98, 105.

Specifically, Huerta alleges that, throughout his employment, he regularly worked Mondays, Wednesdays, and Fridays from approximately 6:00 a.m. until approximately 4:00 p.m.; Tuesdays and Sundays from approximately 6:00 a.m. until approximately 11:00 p.m.; and Thursdays from approximately 6:00 a.m. until approximately 1:00 a.m., for a total of approximately 78 hours per week. *Id.* at ¶ 46. Mera provides similar detail, alleging that he typically worked Sundays through Fridays from approximately 6:00 a.m. until approximately 4:00 p.m. for a total of approximately 57 hours per week. *Id.* at ¶ 66. Florez also provides his specific work schedule throughout his employment, noting that his hours differed each day and alleging that he normally worked Mondays from approximately 6:00 a.m. until approximately 10:00 p.m.; Tuesdays from approximately 6:00 a.m. until approximately 3:00 p.m.; Wednesdays from approximately 6:00 a.m. until approximately 12:00 a.m.; Thursdays from approximately 6:00 a.m. until approximately 5:00 p.m.; Fridays from approximately 6:00 a.m. until approximately 4:00 p.m.; and Sundays from approximately 6:00 a.m. until approximately 4:00 p.m., for a total of approximately 71 hours per week. *Id.* at ¶ 72.

Unlike the other plaintiffs, Borja does not allege that she worked overtime throughout her employment. Instead, Borja concedes that she worked fewer than 40 hours per week at several points during her employment and identifies in great detail how her regular weekly scheduled changed across 7 different periods over the course of her employment, alleging that she worked more than 40 hours per week only during the periods of September 5, 2021 until September 18, 2021, November 28, 2021 until December 11, 2021, and April 17, 2022 until April 23, 2022. *Id*. at ¶¶ 78, 80, 82.

Plaintiffs each allege that they were paid at their regular hourly rates of pay for all hours worked throughout their respective employments, again providing details (i.e. their specific hourly rates of pay) in support of their claims. *Id*. at ¶ 48, 68-69, 74, 85-86. Notably, Mera and Borja not only allege that their hourly rates of pay changed during their employment, but identify the approximate dates on which their respective rates of pay increased. *Id*. at ¶ 68-69, 85-86.

Allegations such as those contained in the Amended Complaint, without more, have been deemed sufficient to state a claim for unpaid overtime wages pursuant to the FLSA. *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 112, 116 (2d Cir. 2023) ("[w]here [a plaintiff] plausibly allege[s] that they worked more than forty hours per week as part of their regularly scheduled workweek"—in other words, each week—"they have adequately stated a claim under the FLSA and need not list the specific workweeks during which they worked more than forty hours."); *Brain v. Execu-Search Grp., LLC*, No. 22 Civ. 8219 (MKV), 2024 WL 838085, at *3-4 (S.D.N.Y. Feb. 28, 2024) (finding that even though plaintiff's allegations were "sparse in detail", the allegations were sufficiently specific to support their claims that plaintiff was entitled to overtime under the FLSA since plaintiff did not merely allege working over forty hours per week, but also provided an estimate of their overtime hours); *Martinez v. Triumph Constr. Corp.*, No. 21 Civ. 4137 (JPO), 2022 WL 861847, at *3 (S.D.N.Y. Mar. 22, 2022) (finding that plaintiff stated a claim for unpaid overtime wages under the FLSA and NYLL where plaintiff pleaded that he worked 60-84 or more hours per week and that defendants paid him some overtime wages at his regular rate of pay instead of a rate at least 1.5 times higher and did not pay any overtime wages for approximately 15-21 overtime hours per week); *Liu v. New York Neuromodulation Med., P.L.L.C.*, No. 20 Civ. 5000 (JPO), 2021 WL 3406373, at *2 (S.D.N.Y. Aug. 4, 2021) (denying motion to dismiss FLSA and NYLL overtime claims even where plaintiff "pleaded somewhat generally" the hours she worked

per week and the weekly salary she earned); *Jung v. Gina Grp.*, LLC, No. 19 Civ. 8624 (MKV), 2020 WL 3640048, at *3 (S.D.N.Y. July 6, 2020) (finding that plaintiff adequately pleaded overtime claims where she alleged more than 40 hours per week and fixed weekly salaries, despite arguments that allegations that her weekly wages did not include overtime pay were needed).

In *Herrera*, the plaintiffs alleged that they generally worked 5 shifts per week, each being either an "opening" shift, which "was generally scheduled from 9:00 A.M. to 6:00 P.M.," or a "closing" shift, which "was generally scheduled from 10:15 A.M. to 7:00 P.M.", and that they were not completely relieved of duties during their lunch breaks. *Herrera*, 84 F.4th at 112. The plaintiffs also alleged that they frequently worked additional hours beyond their regular schedules, including to close the store, perform post-work duties, such as drafting and sending end-of-day reports and messaging clients, and handling shipments of new merchandise. *Id*. In reversing the dismissal of the complaint, the court observed that the plaintiffs' allegations amounted to a claim that they each regularly worked between 43.75 hours and 45 hours per week and determined "[t]hat allegation itself gets us 'beyond forty hours in any given [work]week, and therefore to a plausible claim of overtime.'" *Id*. at 115 (quoting *Dejesus*, 726 F.3d at 89). The Second Circuit clearly distinguished the allegations in *Herrera* from several prior cases – *Lundy*, *Nakahata*, and *Dejesus*[3] – in which the plaintiffs failed to identify any workweek in which they worked more than 40 hours, noting that none of those decisions "requires plaintiffs who plausibly allege that they worked in excess of forty hours for multiple weeks without overtime pay to provide a week-by-week recounting of the hours they worked." *Id*. at 114-15. The Court then removed all doubt from its decision, finding that when a plaintiff sufficiently alleges that she worked 40 hours in a given workweek and some additional uncompensated time, "[n]othing more is required." *Id*. at 115.

---

[3] These cases, upon which JDW Defendants' rely, are discussed in Point I.B, *infra*.

Here, Plaintiffs undoubtedly pleaded sufficient detail to state a claim for unpaid overtime wages under the FLSA and NYLL. The Amended Complaint alleges the specific weeks in which each plaintiff worked more than 40 hours, providing both Plaintiffs' regular schedules and approximate total weekly hours throughout their respective employments, as well as the hourly rates of pay Plaintiffs were paid for all hours worked. Nothing more is required for Plaintiffs to satisfy the standard for pleading overtime claims under the FLSA and NYLL, and therefore JDW Defendants' motion to dismiss Plaintiffs' overtime claims should be denied.

B.  <u>JDW Defendants' Case Law Does Not Support Dismissal of Plaintiffs' Overtime Claims</u>

JDW Defendants' unconvincingly rely on *Lundy*, *Nakahata*, and *Dejesus* in support of their argument that Plaintiffs failed to sufficiently plead their FLSA and NYLL overtime claims. As discussed in Point I.A., *supra*, the Second Circuit easily distinguished those cases from *Herrera*, observing that in each of those prior disputes the plaintiffs "had not plausibly alleged having worked more than forty hours in a given workweek." *Id.* at 114.

In *Lundy*, the Court dismissed the plaintiffs' FLSA overtime claims where one plaintiff only claimed to have worked 39 hours and 45 minutes per week, a second plaintiff alleged that she worked 37.5 to 45 hours approximately twice per month without alleging that she actually worked more than 40 hours during any single week, and a third plaintiff admitted that she did not work overtime hours. *Lundy*, 711 F.3d at 114-15. In *Nakahata*, the Court affirmed the dismissal of FLSA overtime claims where the plaintiffs claimed that they were not paid overtime wages for work performed during meal breaks, required training sessions, and extra shift time, but failed to specify "the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 20. In *Dejesus,* the Court affirmed the dismissal of the plaintiff's overtime claims not based on her use of so called "borderline

phrases," as JDW Defendants claim,[4] but because the complaint generally alleged that the plaintiff worked more than forty hours per week but "did not estimate her hours in any or all weeks or provide any other factual context or content" to support her allegations and "was devoid of any numbers to consider beyond those plucked from the statute." *Dejesus*, 726 F.3d at 89.[5]

None of the pleading deficiencies addressed in *Lundy*, *Nakahata,* and *Dejesus* are present in this case. As described herein, the Amended Complaint includes specific allegations of the hours Plaintiffs worked each week, the particular weeks that each plaintiff worked more than 40 hours, and that JDW Defendants failed to pay Plaintiffs overtime premiums for any week in which their total weekly hours exceeded 40. Amended Complaint at ¶¶ 44, 46, 48, 64, 66, 68-70, 72, 74, 78, 80, 82, 85-86. Plaintiffs have therefore satisfied their burden to state a claim at the pleading stage.

JDW Defendants also misread the holding in *Paleja*, which JDW Defendants' claim held that "a Complaint which alleged that a plaintiff 'regularly worked in excess of 40 hours per week' and that in a 'typical week' the plaintiff would work 'approximately 70 [sic] hours', was insufficient to state an FLSA claim." Def. Memo pp. 6-7 (citing *Paleja v. KP NY Operations, LLC*, No. 21 Civ. 286 (AT), 2022 WL 364007 (2d Cir. 2022)). However, *Paleja* affirmed the dismissal of the plaintiff's overtime claims not because the allegations that he "regularly worked" more than 40 hours per week or that he worked "approximately 70 hours" in a "typical week" were insufficiently detailed to state a claim, but because the plaintiff "failed to provide the District Court

---

[4] *See* Def. Memo. p. 6.
[5] *See Fallon v. 18 Greenwich Avenue, LLC,* No. 19 Civ. 9579 (MKV), 2021 WL 1105066, at *6 (S.D.N.Y. Mar. 23, 2021) (finding that plaintiffs are permitted to use words such as "approximately" and "typically" when at the pleading stage); *Maldonado Juarez v. Butterfield Catering, Inc.*, No. 20 Civ. 4537 (LJL), 2020 WL 6945944, at *2 (S.D.N.Y. Nov. 25, 2020) (denying motion to dismiss where plaintiff alleged specific dates and hours notwithstanding use of "approximately" and "typically"); *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 457 (E.D.N.Y. 2014) (denying motion to dismiss where plaintiff alleged that she "worked approximately fifty hours . . . but was only paid for forty hours"); *Di Simone v. CN Plumbing, Inc.*, No. 13 Civ. 5088 (JG), 2014 WL 1281728, at *4 (E.D.N.Y. Mar. 31, 2014) (denying motion to dismiss where plaintiff "allege[ ] that he typically worked over 40 hours per week on each of these projects and was not appropriately compensated (or compensated at all) for these overtime hours").

with allegations sufficient to allow for the reasonable inference that the $1,400 [weekly] payment [plaintiff received] failed to include overtime compensation." *Paleja*, 2022 WL 364007, at *2.

JDW Defendants also incorrectly rely on *Gisomme v. HealthEx, Corp.*, No. 13 Civ. 2541 (LDW) (WDW), 2014 WL 2041824 (E.D.N.Y. May 15, 2014) to support their argument that Plaintiffs failed to state a claim for unpaid overtime compensation. In *Gisomme*, the Court dismissed the plaintiffs' overtime claims, with leave to amend, where the plaintiffs only estimated that they worked an average of 50 and 53 hours per week without specifying their daily or weekly work schedule, which the Court deemed "insufficient to state a claim for failure to pay overtime compensation 'in a given workweek.'" *Gisomme*, 2014 WL 2041824 at *2 (quoting *Lundy*, 711 F.3d at 114).[6] The Court was therefore unable to distinguish which days, weeks, or hours the plaintiffs were allegedly not paid overtime wages, let alone whether their other claims had any merit. *Id.* at *2-3. Here, Plaintiffs sufficiently pleaded the specific dates, time periods, and hours they worked each week, clearly reflecting the overtime hours Plaintiffs worked and for which they were not properly compensated each week during their respective employments. *See* Amended Complaint at ¶¶ 44, 46, 48, 64, 66, 68-70, 72, 74, 78, 80, 82, 85-86.

Finally, JDW Defendants inexplicably argue that Plaintiffs have not identified a single week in which they worked uncompensated overtime hours because "an employee's average hourly wage is calculated 'by dividing his total remuneration for employment ... in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.'" Def. Memo p. 7 (citing 29 C.F.R. § 778.109). JDW Defendants' argument is perplexing; since Plaintiffs have expressly alleged that they were paid by the hour throughout their employment, there is no need to compute their regular hourly rates of pay as JDW

---

[6] Notably, the Court primarily relied on *Lundy*, *Nakahata*, and *Dejesus* to support its determination in *Gisomme*. *See Gisomme*, 2014 WL 2041824 at *2.

Defendants suggest. Nor do JDW Defendants provide any support for their claim that "it is not enough to merely allege that a plaintiff generally received an hourly wage without alleging how much that plaintiff earned in a single week compared to how many hours that plaintiff worked," and it is unclear how such a contention supports the dismissal of Plaintiffs' overtime claims. *Id.* at p. 7. However, even if the Court were to entertain this argument, the Court can easily compute Plaintiffs' respective weekly compensation by multiplying each plaintiff's total weekly hours by their regular hourly rates of pay, which are clearly specified and delineated in the Amended Complaint.

Accordingly, Plaintiffs have properly pleaded overtime claims pursuant to the FLSA and NYLL, and JDW Defendants' motion to dismiss these claims should be denied in its entirety.

C. <u>Plaintiffs Sufficiently Alleged That Bissoon and Deane Were Their Employers</u>

To determine whether an employment relationship exists under the FLSA, courts look to the economic reality test, which generally considers four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled the employee work schedules or schedules of employment, (3) determined the rate and method of payment; and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). "These factors are intended to be 'nonexclusive and overlapping,' and are to be applied in a manner that ensures that the economic reality test is 'sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA.'" *Imbarrato v. Banta Management Services, Inc.,* No. 18 Civ. 5422 (NSR), 2020 WL 1330744, at *3 (S.D.N.Y. Mar. 20, 2020) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013)). "The NYLL's definition of 'employer is 'nearly identical' to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors." *Imbarrato*, 2020 WL 1330744, at *3.

At the pleading stage, a plaintiff's burden to satisfy the economic reality test is not particularly high, and even vague, conclusory allegations about an individual defendant's operational control over the business may be sufficient to defeat a motion to dismiss. *See Winfield v. Babylon Beauty School of Smithtown, Inc.*, 89 F. Supp.3d 556, 569 (E.D.N.Y. 2015); *Savor Health, LLC v. Day*, No. 19 Civ. 9798 (RA), 2022 WL 912236, at *5 (Mar. 29, 2022) (finding that even though allegations about the employee-employer relationship were somewhat vague, they were sufficient at such an early stage in litigation); *Rahman v. Red Chili Indian Café, Inc.*, No. 17 Civ. 5156 (RA), 2021 WL 2003111, at *2 (S.D.N.Y. May 19, 2021) (finding that plaintiffs had pleaded individuals were their employers when they alleged that "the individual Defendants are each an owner and/or shareholder of [the restaurant], and that each had the power to hire and fire Restaurant employees, and control the terms and conditions of Plaintiffs' employment, including establishing their wages, settling their work schedules, and maintaining their employment records"). Moreover, a plaintiff need not allege that a defendant meets all four factors of the economic reality test to establish individual liability. *See Mahoney v. Amekk Corp.*, No. 14 Civ. 4131 (ENV) (VMS), 2016 WL 6585810, at *8-9 (E.D.N.Y. Sept. 30, 2016) (holding the individual defendant liable even though the plaintiff only alleged 3 of the 4 *Carter* factors).

Although the Amended Complaint unquestionably pleads sufficient facts to meet all 4 factors of the economic reality test, JDW Defendants focus on only select allegations while ignoring significant portions of the Amended Complaint that details allegations of the Individual Defendants' liability. In particular, JDW Defendants only reference allegations in the Amended Complaint that the Individual Defendants "were and still are officers, directors, shareholders, owners, and/or persons in control of [JDW], who exercise significant control over [JDW's] operations; have the authority to hire, fire, and discipline employees; set employees' work

schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records." *See* Def. Memo at p. 9 (quoting Amended Complaint ¶ 16). However, conveniently absent from Def. Memo are Plaintiffs' well-pleaded allegations that the Individual Defendants "were responsible for setting Plaintiffs' schedules, determining their day-to-day activities, and supervising their performance;" "had the power to discipline and terminate Plaintiffs;" "were responsible for compensating Plaintiffs;" and "exercised sufficient control over Plaintiffs' day-to-day operations to be considered their employers for the purposes of the FLSA and NYLL." Amended Complaint ¶¶ 19-22. These allegations are sufficient to meet the *Carter* factors and state a claim for liability against the Individual Defendants. *See Mahoney*, 2016 WL 6585810, at *8 (finding allegations in the Second Amended Complaint that the individual defendant "(1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules and conditions of employment; and (3) determined the rate and method of employee's payment" met 3 of the 4 *Carter* factors and were sufficient to establish individual liability). Furthermore, the Amended Complaint includes multiple instances in which Deane expressly exercised his operational control over Huerta's employment by, *inter alia*, reviewing and denying Huerta's request for reasonable accommodations; offering to transfer Huerta to another work site; and, on multiple occasions, telling Huerta that he no longer had a job with JDW Defendants. *Id.* at ¶¶ 53-58.

JDW Defendants rely on *Apolinar v. R.J. 49 Rest., LLC* to argue that Plaintiffs' allegations are conclusory and insufficient to withstand a motion to dismiss. *See* Def. Memo at pp. 8-9. However, the facts in *Apolinar* are entirely distinguishable from this matter, and Def. Memo misleadingly cites sparse language taken out of context in an effort to bolster JDW Defendants' position. In *Apolinar*, the Court determined that the plaintiffs did not adequately allege that Susan

Kim was individually liable because: (i) the plaintiffs merely alleged that they knew Ms. Kim as the "boss' mother" and that all of defendants' locations were owned and operated by a family; and (ii) the Amended Complaint was devoid of any non-conclusory allegations suggesting that Ms. Kim exercised any degree of control over the location in which plaintiffs worked or that she had any control over plaintiffs' employment. *Apolinar*, 2016 WL 2903278, at *5. In the instant matter, the Amended Complaint includes significantly more detail of the Individual Defendants' liability than the conclusory allegations presented in *Apolinar*. Here, Plaintiffs expressly identified Deane and Bissoon as their employers and described the particular ways in which they exercised control over Plaintiffs' employment, including by setting Plaintiffs' schedules, paying Plaintiffs' wages, determining Plaintiffs' job duties, supervising Plaintiffs' performance, and having the power to discipline and terminate Plaintiffs. Amended Complaint ¶¶ 16, 18-22, 53-58. As for Deane, the Huerta's allegations go a step further, citing specific examples of Deane exercising his control over Huerta's request for reasonable accommodations, his work location, and his employment status. *Id.* at ¶¶ 53-58.

JDW Defendants also cite *Davis v. Ching Yi Cheng*, in which the Court dismissed claims against the individual defendants' children after a bench trial because "there is nothing in this record to indicate in any manner that these children of the defendant Ching Yi Cheng … had [anything] [] to do with the hiring, employment or wages of the [p]laintiff." 16 Civ. 1354 (ADS) (SIL), 2017 WL 6622545, at *7 (E.D.N.Y. Dec. 28, 2017). *Davis* is plainly distinct from this matter, both because the present action is only at the pleading stage and because the Amended Complaint specifically alleges that the Individual Defendants had the authority to hire and fire Plaintiffs and determine their compensation, among other responsibilities. Amended Complaint ¶¶ 16, 18-22, 53-58.

**II.     Huerta's ADA Claim Must Not Be Dismissed Because Huerta Followed Administrative Procedures Under Applicable Law And Within This District**

A plaintiff must first file a timely charge with the EEOC and be provided with a right to sue letter before filing suit for claims under the ADA. *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 177 (S.D.N.Y. 2023). Section 2000e-5(f)(1), governs the process for the issuance of such a right to sue letter and provides, in relevant part: "… if within [180] days from the filing of such charge ... the Commission has not filed a civil action ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved." 42 U.S.C. § 2000e-5(f)(1). Further, the EEOC promulgated a regulation permitting the issuance of right to sue letters before the 180 days have elapsed if the EEOC "has determined that it is probable … [it] will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." 29 C.F.R. § 1601.28(a)(2).

Contrary to JDW Defendants' claims, Huerta properly exhausted his administrative remedies with respect to his ADA claim by timely filing a charge with the EEOC and receiving right to sue letters, which certified that, "the Commission's processing of [Huerta's] charge will not be completed within 180 days from the filing date." *See* Amended Complaint, Exhibit 1.

A.  Section 2000e and 29 C.F.R. § 1601.28(a)(2) Permit Early Right to Sue Letters

While the Second Circuit has not addressed the validity of right to sue letters issued before the expiration of 180 days, other Circuit courts have addressed this precise issue, the majority of which have upheld their validity. *Compare Saulsbury v. Wismer & Becker, Inc.*, 644 F.2d 1257 (9th Cir. 1980) (holding that issuance of an early right to sue letter does not bar Title VII claims); *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1275 (10th Cir. 2001) (same); *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061 (11th Cir. 1994) (same), *with Martini v. Fed. Nat.'l Mortg. Ass'n*,

178 F.3d 1336, 1347 (D.C. Cir. 1999) (barring a Title VII claim because the right to sue letter was issued before 180 days). Moreover, this Court has consistently upheld the validity of early right to sue letters for decades. *See Germain*, 655 F. Supp. 3d at 179; *Mwangi v. Passbase, Inc.*, No. 21 Civ. 6728 (ER), 2022 WL 2133734, at *4 (S.D.N.Y. June 14, 2022); *Eckhart v. Fox News Network, LLC*, No. 20 Civ. 5593 (RA), 2021 WL 4124616, at *13 (S.D.N.Y. Sept. 9, 2021); *Areu v. Fox News Network, LLC*, No. 20 Civ. 8678 (RA), 2021 WL 4124226, at *7-8 (S.D.N.Y. Sept. 9, 2021); *Hernandez v. Premium Merch. Funding One, LLC*, No. 19 Civ. 1727 (WHP), 2020 WL 3962108, at *6 (S.D.N.Y. July 13, 2020); *Hussein v. Pierre Hotel*, No. 99 Civ. 2715 (DC), 2000 WL 776920, at *3-4 (S.D.N.Y. June 14, 2000); *Huang v. Gruner + Jahr USA Publ'g*, No. 99 Civ. 5058 (DLC), 2000 WL 640660, at *2 (S.D.N.Y. May 17, 2000); *Nodelman v. Gruner & Jahr USA Publ'g*, No. 98 Civ. 1231 (LMM), 2000 WL 502858, at *6 (S.D.N.Y. Apr. 26, 2000); *Palumbo v. Lufthansa German Airlines*, No. 98 Civ. 5005 (HB), 1999 WL 540446, at *2 (S.D.N.Y. July 26, 1999); *Figueira v. Black Ent. Television, Inc.*, 944 F. Supp. 299, 303-08 (S.D.N.Y. 1996). JDW Defendants have not articulated any compelling reason for this Court to depart from the majority of circuit courts and the well-established precedent of this Court upholding the validity of early right to sue letters.

First, there is nothing in the language of Section 2000e-5(f)(1) that prohibits early right to sue letters. *Germain*, 655 F. Supp. 3d at 178 ("Defendant's argument that 42 U.S.C. § 2000e-5(f)(1) unambiguously bars the issuance of a right-to-sue letter before 180 days have elapsed after is charge is not sound"); *Hernandez*, 2020 WL 3962108, at *5 (same); *Figueira*, 944 F. Supp. at 305 ("§ 2000e-5(f)(1) states that if X occurs, or if Y occurs, then the Commission shall issue a notice of right to sue. However, the word 'if together with 'shall' does not bar the conclusion that even when neither of the two conditions occurs, the Commission still may issue a notice of right

to sue."). Indeed, "[e]very court of appeals that has considered Section 2000e-5(f)(1) has agreed that it does not bar the issuance of right-to-sue letters before the expiration of the 180-day period." *Germain*, 655 F. Supp. 3d at 178. Even the D.C. Circuit in *Martini*, a decision on which JDW Defendants heavily rely, reasoned that, "[n]othing in section 2000e–5(f)(1)'s language forecloses Martini's view that the 180–day provision is simply a maximum, not minimum, waiting period for complainants seeking access to federal court." *Martini*, 178 F.3d at 1344.

Second, courts in this district have also determined that 29 C.F.R. § 1601.28(a)(2), the EEOC regulation expressly permitting early right to sue letters, is a permissible construction of Section 2000e-5(f)(1) and that its purpose is to ensure that parties are not required to wait indefinitely for administrative action. *Germain*, 655 F. Supp. 3d at 179 (collecting cases). In *Germain*, the Court implemented the two-step framework set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 937 (1984) to determine the validity of 29 C.F.R. § 1601.28(a)(2). *Germain*, 655 F. Supp. 3d at 179-182. The Court first considered whether Section 2000e-5 prohibits the EEOC from issuing early right to sue letters, analyzing the text of both Section 2000e-5(f)(1) and Section 2000e-5(b). *Id.* at 178-81. With respect to Section 2000e-5(f)(1), the Court agreed that nothing in this provision prohibits the issuance of right to sue letters before 180 days have elapsed. *Id.* at 179 ("[i]f anything, the use of the word "within" in that provision of the statute suggests that "early" right-to-sue letters are appropriate … Within a particular length of time means before that length of time has passed"). With respect to Section 2000e-5(b), the Court expressly rejected the holding in *Martini*, reasoning that while Section 2000e-5(b) requires the EEOC to investigate a charge as promptly as possible, and not later than 120 days after the filing of a charge, the text of Section 2000e-5(b) does not mandate that the EEOC investigate for exactly 180 days or prohibit the issuance of right to sue letters issued before

180 days. *Id.* at 180-81. The Court then considered whether the EEOC's interpretation of the statute on which it relied in issuing 29 C.F.R. § 1601.28(a)(2) was based on a permissible construction of the statute and found the interpretation was reasonable and did not conflict with Section 2000e-5(f)(1), noting that, "[t]he EEOC's duty to investigate is mandatory. But on its face, the EEOC's regulation does not undermine that duty. A designated official at the EEOC must still make a determination 'that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge ....'" *Id.* at 181 (internal citations omitted).

Third, JDW Defendants also contend that when Congress enacted Section 2000e-5(f)(1), it was aware of the EEOC's lengthy delays in processing discrimination charges, and that this supports their position that Congress intended for charging parties to wait at least 180 days before filing a lawsuit. Def. Memo p. 15. However, "Congress added Section 2000e–5(f) as part of the 1972 amendments to Title VII to protect aggrieved parties from lengthy delays." *Walker*, 240 F.3d at 1274. The statements accompanying the Conference Report cited by JDW Defendants make clear that the 180-day period was designed to ensure that complainants do not endure lengthy delays if the EEOC does not act with due diligence or speed; and to allow a complainant to choose to pursue his or her own remedy where there is inaction, dalliance, dismissal, or an unsatisfactory resolution. Def. Memo at p. 15 (citing 118 CONG. REC. 7168 (1972)). Congress was therefore aware of the delays with the EEOC and clearly enacted Section 2000e-5(f) with the intention of ensuring that claims be handled expeditiously. *See Sims*, 22 F.3d at 1063 (citing H.R. Rep. No. 92–238, 92nd Cong., 2d Sess., reprinted in 1972 U.S. Code Cong. & Ad.News, pp. 2137, 2144) (referring to the 180 day period as a "ceiling" intended to address the EEOC's backlog). Forcing charging parties to wait at least 180 days before filing suit, when the EEOC has confirmed that it

will not likely complete its administrative processing within that timeframe, would not further Congress' intent of handling discrimination cases expeditiously.

While Congress clearly wanted to promote the EEOC as the preferred tribunal for the resolution of discrimination claims, Congress also expressed its desire to ensure prompt resolutions of discrimination cases and to protect claimants' right to proceed in court if the EEOC could not expeditiously process such claims. The EEOC's ability to issue early notices advances both policies. "If the EEOC determines that a case probably will get bogged down in the administrative process, such that the EEOC will not resolve the claim, nothing in the Act or legislative history precludes it from so notifying the claimant and authorizing a private action in federal court before the expiration of 180 days." *Figueira*, 944 F. Supp. at 306.

Moreover, it bears noting that 29 C.F.R. § 1601.28(a)(2), the EEOC regulation authorizing early right to sue letters, has not escaped public or legislative notice in the past several years. *Walker*, 240 F.3d at 1276. Yet Congress has not taken any action to invalidate early right to sue letters. *Id.* "If EEOC's effort to meet the same goal of dealing with its backlog via the Regulation had been met with congressional disfavor, it is surely reasonable to expect that a move would have been launched to repudiate the Regulation via statutory amendment." *Id.*

Lastly, JDW Defendants complain that they never received notice of Huerta's charge of discrimination or right to sue letters. Def. Memo p. at 14. However, such documents are sent directly by the EEOC, not the claimant, and any alleged failure by the EEOC to send such documents to JDW Defendants does not bar Huerta from pursuing this action in federal court, as it would be improper to penalize Huerta for the EEOC's alleged failure to serve JDW Defendants with these notices. *Hernandez*, 2020 WL 3962108, at *4 (collecting cases).

B. <u>The Case Law Relied on By JDW Defendants Does Not Support Dismissal of Huerta's ADA Claim</u>

The case law JDW Defendants cite in support of their request to dismiss Huerta's ADA claim is unavailing.

Initially, many of the cases relied on by JDW Defendants are from outside this Circuit, and thus are not controlling on this Court. *See e.g., Montoya v. Valencia County*, 872 F. Supp. 904, 906 (D.N.M. 1994); *Mills v. Jefferson Bank E.*, 559 F. Supp. 34, 35 (D. Colo. 1983); *Martini*, 178 F.3d at 1336. Moreover, *Martini*, which JDW Defendants repeatedly cite, has been expressly rejected by this Court. *See Germain*, 655 F. Supp. 3d at 180 ("the Court respectfully disagrees with the conclusion of the D.C. Circuit in *Martini*…"); *Hernandez*, 2020 WL 3962108, at *6-7 (disagreeing with *Martini*).

Two other decisions on which JDW Defendants rely, *Gibb v. Tapestry, Inc.*, 2018 WL 6329403, at *4 (S.D.N.Y. Dec. 3, 2018) and *New York v. Holiday Inns, Inc.*, 656 F. Supp. 675, 679 (W.D.N.Y. 1984), run contrary to numerous decisions from this Court and other courts within the Second Circuit upholding the validity of early right to sue letters. *See Germain,* 655 F. Supp. 3d at 178 (disagreeing with *Gibb* and finding that *Gibb* misconstrues the text of the statute); *Hernandez*, 2020 WL 3962108, at *5 (also disagreeing with *Gibb*).

JDW Defendants reliance on *Fort Bend Cnty. Texas v. Davis* and *Occidental Life Insurance Co. of California v. EEOC* are also misplaced. In *Fort Bend*, the Court merely held that Title VII's EEOC charge filing requirement is mandatory, not jurisdictional, and that a court must enforce said charge filing requirement if a party properly raises it. *Fort Bend Cnty., Texas v. Davis,* 139 S. Ct. 1843, 1849 (2019); *Hernandez*, 2020 WL 3962108, at *3 (finding defendants' reliance on *Fort Bend* misplaced where defendants argued plaintiff's early right to sue letters were invalid). In *Occidental Life*, the Court addressed whether the EEOC is required to bring an action within 180

days of the filing of a charge of discrimination. *Occidental Life Ins. Co. of California v. E.E.O.C.*, 432 U.S. 355, 361 (1977). Neither of these decisions even addressed the 180-day period at issue here, let alone held that a plaintiff is barred from filing suit prior to expiration of the 180-day period if a right to sue notice has been issued.

*Weise v. Syracuse Univ.*, 522 F.2d 397 (2d Cir. 1975) also does not support dismissal of Huerta's ADA claim. Contrary to JDW Defendants' contentions, *Weise*, which was decided before the promulgation of 29 C.F.R 1601.28(a)(2), "stands for the proposition that the 180 days is not jurisdictional or mandatory, and can be waived when the EEOC is not likely to effect conciliation as contemplated by Title VII." *Figueira*, 944 F. Supp. at 308. Indeed, *Weise* noted that where the EEOC has stated that it would be unable to act on the charge within 180 days, "a remand to the Commission would be an exercise in futility." *Weise*, 522 F.2d at 411 n. 27. As in *Weise*, a remand of Huerta's ADA claim to the EEOC would be futile as the EEOC has already certified that it will be unable to process the charge within 180 days.

C.  <u>The Dismissal of Huerta's ADA Claim Would Be Inequitable</u>

Even if the Court finds that the EEOC was required to wait 180 days before issuing Huerta's right to sue letter, such a deficiency would not operate as a jurisdictional bar on Huerta's ADA claim; rather, it would be a condition precedent to bringing suit that may be excused when warranted by relevant equitable considerations. *Arroyo v. WestLB Admin., Inc.*, 213 F.3d 625 (2d Cir. 2000) ("Whether or not an early right-to-sue letter is valid, it is clear that the issue is not jurisdictional in nature"); *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 381–83 (E.D.N.Y. 2000). Remanding Huerta's ADA claim to the EEOC, as requested by JDW Defendants, will result in wasted resources and a needless delay of Huerta's claims. Since the EEOC has already certified it will be unable to process Huerta's ADA claim within 180 days, the parties will undoubtedly be

back before this Court months from now after having unnecessarily expended additional time, effort, and resources for no discernible purpose. *McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 327 (E.D.N.Y. 2002); *Commodari*, 89 F. Supp. 2d at 383 ("If the EEOC will not, or cannot because of insufficient staffing or funding, undertake the investigation and conciliation efforts contemplated by Congress, the aggrieved employee and his employer should not be forced to undergo needless delay in what will inevitably a judicial resolution of their dispute").

JDW Defendants' arguments run contrary to both the significant weight of authority, both in this Court and across the country, and the express intent of Congress for discrimination claims to be processed expeditiously. Moreover, dismissing Huerta's ADA claims solely to run out the clock on the 180-day period, which the EEOC represented it will not meet, would significantly prejudice Huerta by needlessly delaying his efforts to prosecute his claims. The Court should therefore deny JDW Defendants' motion to dismiss Huerta's ADA claims.

### III. To the Extent the Court Deems Plaintiffs' Pleadings Deficient, the Court Should Grant Plaintiffs Leave to Amend the Amended Complaint

JDW Defendants misrepresent to this Court that Plaintiffs' "pleading deficiencies [] were set forth in Defendants' pre-motion conference letter seeking to file a motion to dismiss the Complaint . . ." Def. Memo, at p. 17. While Plaintiffs deny any deficiencies in their pleadings, Plaintiffs note that neither of JDW Defendants' pre-motion letters referenced JDW Defendants' argument that Plaintiffs' failed to sufficiently plead the Individual Defendants were Plaintiffs' employers under the FLSA and NYLL, which JDW Defendants raise for the first time in their Motion. *See* Dkt. Nos. 24, 33; Def. Memo, at pp. 7-9. As the Court is undoubtedly aware, this Court's Individual Rules of Practice require the party making a motion to dismiss to file a pre-motion letter that includes "each specific argument" and relevant case law supporting its position, and the party opposing said motion to either file a letter indicating that they will amend the

complaint to address the issues identified in the pre-motion letter or, if no amended complaint is needed, file a letter responding to the movant's pre-motion letter. Individual Rules of Practice of the Honorable Kenneth M. Karas, at ¶ II(A). By raising an argument for the first time in their motion to dismiss and requesting that the Court deny Plaintiffs the opportunity to submit a Second Amended Complaint, JDW Defendants defy and seek to circumvent both the letter and spirit of the Court's Individual Rules. Given that JDW Defendants submitted multiple pre-motion letters to the Court in which they expressly cited the Court's Individual Rules, JDW Defendants were not only aware of their obligation to identify this argument before filing their motion to dismiss but had more than one opportunity to do so. Based on JDW Defendants' glaring violation of the Court's Individual Rules, their deliberate misrepresentation that all of Plaintiffs' alleged deficiencies were set forth in JDW Defendants' pre-motion letters, and their audacious request that the Court dismiss Plaintiffs' claims without granting leave to amend, the Court should refuse to consider JDW Defendants' arguments as to the Individual Defendants in their entirety. However, should the Court both consider and agree with JDW Defendants' position that the Amended Complaint does not sufficiently allege that the Individual Defendants were Plaintiffs' employers, Plaintiffs respectfully request leave to file a Second Amended Complaint pursuant to FRCP 15(a)(2) to address any possible deficiencies related to these claims, given that Plaintiffs had no prior notice of this argument prior to being served with JDW Defendants' motion. Further, should this Court find that Plaintiffs failed to adequately plead with respect to any of their remaining claims; Plaintiffs also respectfully seek leave to file a Second Amended Complaint to address any such deficiencies.

It is well established that leave to amend pleadings should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2); *Forman v. Davis*, 371 U.S. 178, 181-82 (1962) (emphasizing

that the liberal spirit embodied in the language of FRCP 15(a)(2) is to be followed by the court). "If the plaintiff has at least colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979) (citing *Forman*, 371 U.S. at 182).

While JDW Defendants cite several cases in support their request that the Court deny Plaintiffs the opportunity to file a Second Amended Complaint, none of JDW Defendants' authority is based on actions involving the FLSA or NYLL. Despite what JDW Defendants would like this Court to believe, courts in this district have often permitted plaintiffs with similar allegations as Plaintiffs multiple opportunities to amend their complaints. *See Fallon*, 2021 WL 1105066, at *9 (granting permission to file a second amended complaint to cure deficiencies not addressed in the first amended complaint); *Zhong v. August Corp.*, 498 F. Supp.2d 625, 632 (S.D.N.Y. 2007) (granting permission to file a second amended complaint and noting that the "Second Circuit has repeatedly expressed its lenient stance towards allowing plaintiffs to amend claims that have been dismissed…"); *Jianjun v. 2425 Broadway Chao Restaurant, LLC*, No. 16 Civ. 5735 (GHW), 2017 WL 2600051, at *9 (S.D.N.Y. June 15, 2017) (holding that "[a]lthough [p]laintiffs have already amended their complaint in response to [defendant's] first motion to dismiss, they have not yet had an opportunity to do so in response to an opinion of the Court. Accordingly, the Court cannot conclude that allowing Plaintiffs to amend once again would be futile"). Here, Plaintiffs have not engaged in dilatory tactics nor have they demonstrated bad faith. In fact, Plaintiffs only seek leave to amend in the event this Court deems their pleadings deficient and note again JDW Defendants' failure to include all of their arguments in their pre-motion letters, in contravention of this Court's Individual Rules. Moreover, there is no indication that JDW

Defendants will suffer any prejudice should Plaintiffs file a Second Amended Complaint, particularly given the early stage of this action.

Therefore, should the Court grant any portion of JDW Defendants' motion, Plaintiffs respectfully request leave to submit a Second Amended Complaint to cure any deficiencies in the Amended Complaint.

## IV.    The Court Has Supplemental Jurisdiction Over Plaintiffs' NYLL and NYSHRL Claims

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 in that this action arises under the FLSA and the Americans with Disabilities Act of 1990, 42 U.S.C § 12101 *et seq* ("ADA"). As discussed Points I and II, *supra*, JDW Defendants' arguments that Plaintiffs failed to state a claim for JDW Defendants' violations of the FLSA and ADA are meritless. As a result, upon denying JDW Defendants' motion to dismiss this Court will retain original jurisdiction over this matter and may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." 28 U.S.C. § 1367(a).

Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (citation and internal quotation marks omitted). Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citations omitted).

Plaintiffs' claims under the NYLL and New York State Human Rights Law clearly derive from the same common nucleus of operative fact as their claims under the FLSA and ADA. Indeed, all claims in this action arise from the same employment policies and practices implemented by Defendants. Accordingly, should Plaintiffs' FLSA and ADA claims survive JDW Defendants'

motion to dismiss, this Court may properly exercise supplemental jurisdiction over Plaintiffs' NYLL and NYSHRL claims. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) ("NYLL and FLSA actions clearly derive from such a common nucleus of operative facts since they arise out of the same compensation policies and practices"); *Yong Kui Chen v. Wai Café Inc.*, No. 10 Civ. 7254 (JCF), 2017 WL 3311228, at *3 (S.D.N.Y. Aug. 2, 2017) ("In wage and hour cases, typically, supplemental jurisdiction is appropriate for NYLL claims during the employment relationship because those claims arise from the same underlying factual basis as FLSA claims"); *Williams v. New York City Dep't of Health & Mental Hygiene*, 299 F. Supp. 3d 418, 429 (S.D.N.Y. 2018) (exercising supplemental jurisdiction over the plaintiff's NYSHRL claims where the Court found "no material differences between the ADA and the NYSHRL" for purposes of that action).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny JDW Defendants' motion to dismiss in its entirety.

Dated: May 17, 2024
New York, New York

                                KATZ MELINGER PLLC

                        By:     */s/ Katherine Morales*
                                Katherine Morales, Esq.
                                370 Lexington Avenue, Suite 1512
                                New York, New York 10017
                                (212) 460-0047
                                kymorales@katzmelinger.com
                                *Attorneys for Plaintiffs*

25