UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE HUERTA, *et al.*, *individually and on
behalf of all others similarly situated*,

                                    Plaintiffs,

                    -v-

J.D. WORKFORCE, INC., *et al.*,

                                    Defendants.

---

DAVID WEISS *and* MARAV USA LLC,

                                    Cross Claimants,

                    -v-

J.D. WORKFORCE, INC.,

                                    Cross
                                    Defendant.

---

No. 23-CV-5382 (KMK)

OPINION & ORDER

Appearances:

Alexa N. Salazar, Esq.
Faruqi & Faruqi LLP
New York, NY
*Counsel for Plaintiffs*

Nicole D. Grunfeld, Esq.
Katherine Y. Morales, Esq.
Katz Melinger PLLC
*Counsel for Plaintiffs*

Emanuel Kataev, Esq.
Sage Legal LLC
Jamaica, NY
*Counsel for Defendants J.D. Workforce, Inc.,
Hamwattie Bissoon, and Steven Deane, and
Cross Defendant J.D. Workforce, Inc.*

Nicholas J. Fortuna, Esq.

Han L. Rong, Esq.
Paula Lopez, Esq.
Allyn & Fortuna LLP
New York, NY
*Counsel for Defendants and Cross Claimants*
*Marav USA LLC and David Weiss*

KENNETH M. KARAS, United States District Judge:

Plaintiffs Jose Huerta, Vinicio Mera, Jose Florez, and Elvia Borja (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated, bring this Action against J.D. Workforce, Inc. ("JDW"), Marav USA LLC d/b/a/ Bingo Wholesale ("Bingo Wholesale"), Hamwattie Bissoon, Steve Deane, and David Weiss (together, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL"), §§ 190 *et seq.* and 650 *et seq.* (*See* Am. Compl. ("AC") ¶¶ 95–123 (Dkt. No. 30).) Plaintiff Huerta further alleges violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* (*Id.* ¶¶ 124–45.) Defendants JDW, Bissoon, and Deane (collectively, "Moving Defendants") have moved to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). (*See* Not. of Mot. (Dkt. No. 45).) For the following reasons, the Motion is granted in part and denied in part.

I. Background

A. Factual Background

Unless otherwise stated, the following facts are drawn from the Amended Complaint. The facts alleged therein are assumed true for the purpose of resolving the instant Motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

1. <u>The Parties</u>

J.D. Workforce, Inc. ("JDW") is a staffing and payroll agency that provides various services to businesses in New York, New Jersey, and Pennsylvania, such as coordinating payroll and placing workers to supplement a clients' core workforce. (AC ¶ 11.) Bingo Wholesale is a bulk supermarket with four locations in New York, including a location in Spring Valley, New York (the "Monsey Location"), where Plaintiffs worked during the relevant period, and one in Brooklyn, New York (the "Brooklyn Location"). (*Id.* ¶¶ 13–14.)

Bissoon and Deane are "officers, directors, shareholders, owners, and/or persons in control of JDW, who exercise significant control over JDW's operations; have the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records." (*Id.* ¶ 16.) Weiss is an "officer, director, shareholder, owner, and/or person in control of Bingo Wholesale, who exercises significant control over Bingo Wholesale's operations; has the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records." (*Id.* ¶ 17.)

Collectively, Defendants "jointly managed, supervised, hired, fired, and controlled Plaintiffs' compensation," and "were responsible for setting Plaintiffs' schedules, determining their day-to-day activities, and supervising their performance." (*Id.* ¶¶ 18–19, 21.) Defendants also had the power to discipline and terminate Plaintiffs. (*Id.* ¶ 20.)

Plaintiffs, and others similarly situated, consist of "no less than forty . . . current and former cleaners and stocking clerks employed by Defendants." (*Id.* ¶ 28.)

3

### 2. Plaintiffs' Work Schedules and Earnings

During the relevant time period, Plaintiffs were employed by Defendants as cleaners (Mera, Florez, and Borja) and as a stocking clerk (Huerta) at the Monsey Location. (*Id.* ¶¶ 44, 64, 70, 75.) Their job duties included, inter alia, breaking down and recycling empty boxes, discarding waste, mopping floors, scrubbing restrooms, cleaning shelves, unloading products from trucks, organizing and labeling inventory, removing spoiled product from display, and notifying supervisors of damaged or expired items. (*Id.* ¶¶ 45, 65, 71, 76.) Per Defendants' requirements, Plaintiffs recorded their actual work hours on handwritten timesheets. (*Id.* ¶¶ 47, 67, 73, 84.)

#### a. Huerta

Huerta was employed by Defendants from on or around October 1, 2020 until on or around September 12, 2022. (*Id.* ¶ 44.) Through the period of his employment, Huerta regularly worked six days a week on the following schedule: Mondays, Wednesdays, and Fridays from approximately 6:00 AM to approximately 4:00 PM; Tuesdays and Sundays from approximately 6:00 AM to approximately 11:00 PM; and Thursday from approximately 6:00 AM to approximately 1:00 AM. (*Id.* ¶ 46.) Huerta took a daily thirty-minute lunch break and a daily twenty-minute rest break, bringing his total hours to approximately seventy-eight hours per week. (*Id.*)

During the time period described above, Defendants paid Huerta at a rate of $17.00 per hour for all hours worked, "including all hours worked over forty[] per week." (*Id.* ¶ 48.)

#### b. Mera

Mera was employed by Defendants from on or around October 2, 2020 until on or around March 14, 2022. (*Id.* ¶ 64.) Through the period of his employment, Mera regularly worked six

days a week, Sundays through Fridays, from approximately 6:00 AM to approximately 4:00 PM, with a daily thirty-minute break, for a total of approximately fifty-seven hours per work. (*Id.* ¶ 66.)

From on or around October 2, 2020 until on or around October 14, 2021, Defendants paid Mera at a rate of $12.50 per hour. (*Id.* ¶ 68.) From on or around October 15, 2021 until on or around March 14, 2022, Defendants paid Mera $14.00 per hour. (*Id.* ¶ 69.) At either pay rate, Mera received his hourly wage for all hours worked, "including all hours worked over forty[] per week." (*Id.* ¶¶ 68–69.)

      c.  <u>Florez</u>

Florez worked for Defendants from on or around January 7, 2022 until on or around July 1, 2022. (*Id.* ¶ 70.) Florez regularly worked six days per week, as follows: Mondays from approximately 6:00 AM to approximately 10:00 PM; Tuesdays from approximately 6:00 AM to approximately 3:00 PM; Wednesdays from approximately 6:00 AM to approximately 12:00 AM; Thursdays from approximately 6:00 AM to approximately 5:00 PM; Fridays from approximately 6:00 AM to approximately 4:00 PM; and Sundays from approximately 6:00 AM to approximately 4:00 PM. (*Id.* ¶ 72.) Flores received a daily thirty-minute break, for a total of approximately seventy-one hours worked per week. (*Id.*) During his period of employment, Defendants paid Florez $14.00 per hour for all hours worked, "including all hours worked over forty[] per week." (*Id.* ¶ 74.)

      d.  <u>Borja</u>

Borja was employed by Defendants from on or around July 1, 2021 until in or around September 2022. (*Id.* ¶ 75.) During four periods of time (from or around July 1, 2021 until on or around September 4, 2021; on or around September 19, 2021 until on or around November 27,

2021; on or around December 12, 2021 until on or around April 16, 2022; and on or around April 24, 2022 until on or around September 2022), Borja regularly worked five days a week on the following schedule: Sundays through Tuesdays from approximately 4:00 PM to approximately 11:00 PM, and Wednesdays and Thursdays from approximately 4:00 PM to approximately 1:00 am. (*Id.* ¶¶ 77, 79, 81, 83.) With a daily thirty-minute break, Borja's hours worked totaled approximately thirty-five and a half hours per week. (*Id.* ¶¶ 77, 79, 83.) During three periods of time (from on or around September 5, 2021 until on or around September 18, 2021; from on or around November 28, 2021 until on or around December 11, 2021; and from on or around April 17, 2022 until on or around April 23, 2022), Borja regularly worked five days a week on the following schedule: Sundays through Tuesdays from approximately 6:00 AM to approximately 4:30 PM, with a daily thirty-minute break, for a total of approximately fifty hours per week. (*Id.* ¶¶ 78, 80, 82.)

Borja was paid at a rate of $13.50 per hour from on or around July 1, 2021 until on or around January 31, 2022, and $14.00 per hour from on or around February 1, 2022 until in or around September 2022, for all hours worked, including hours over forty per week. (*Id.* ¶¶ 85, 86.)

### 3. Huerta's Accident

On or around February 28, 2022, Huerta, after crashing into shelving units at the Monsey Location while operating a warehouse lift, sustained a ligament tear and a fracture to his foot and ankle. (*Id.* ¶ 49.) After the accident, Huerta underwent multiple surgeries and physical therapy sessions, which required months of recovery and severely restricted his ability to work from February 28, 2022 until on or around August 28, 2022. (*Id.* ¶ 50.)

On August 29, 2022, Dr. Hyun-Ho Choi granted Huerta medical clearance to return to work with certain restrictions, including that Huerta needed to wear a "controlled ankle movement boot at all times while ambulating." (*Id.* ¶ 51.) The medical release letter from Dr. Choi also recommended that Huerta refrain from extensive walking and suggested he should have breaks if he was required to walk "more than [five] minutes at a given time." (*Id.*)

That same day, with the help of a translator (Simon, last name unknown), Huerta spoke to Deane and advised that he had received medical clearance to return to work. (*Id.* ¶¶ 52–53.) Huerta asked Deane to read Dr. Choi's letter to consider the recommended medical accommodations. (*Id.* ¶ 53.) Deane refused to read the letter and stated that Huerta no longer had a job with Defendants, given his long absence. (*Id.* ¶ 54.) After Simon explained to Deane that Huerta's termination could constitute a discriminatory action, Deane reviewed Huerta's medical release letter and stated he had to consult with another party before making a final decision. (*Id.* ¶¶ 55–56.)

On or around September 29, 2022, Huerta's wife, Borja, delivered a new medical release letter to Deane, which indicated Huerta's ability to work if granted reasonable accommodations. (*Id.* ¶ 57.) A few days later, Deane texted Huerta, stating that he did not have a job for him at the Monsey Location, but offering to transfer him to the Brooklyn Location. (*Id.* ¶ 58.) Huerta expressed concern at this offer, as the Brooklyn Location was approximately two and half to three hours away from his home, requiring roundtrip travel of five to six hours a day. (*Id.* ¶ 59.) Huerta noted that this conflicted with his "medical instructions to refrain from driving for extended periods." (*Id.*) Huerta was also concerned that relocating to the Brooklyn site would limit his ability to work more than forty hours a week, thus reducing his wages, and would

significantly increase his travel expenses.  (*Id.* ¶ 60.)  Accordingly, Huerta rejected the position at the Brooklyn Location.  (*Id.* ¶ 62.)

Throughout Huerta's medical leave, Borja and other co-workers informed him that his position at the Monsey Location remained vacant and that JDW had extended other employees' shifts to make up for Huerta's absence.  (*Id.* ¶ 61.)  Once Huerta rejected the transfer offer, Defendants terminated his employment rather than returning him to his open position at the Monsey Location.  (*Id.* ¶ 63.)

Following his termination, Huerta filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 5; AC, Ex. A.)  On September 19, 2023, and September 20, 2023, the EEOC sent Huerta Notices of his Right to Sue.  (*See* AC ¶ 5; AC, Ex. A.)

### B. Procedural History

Plaintiffs initiated this Action on June 26, 2023.  (*See* Compl. (Dkt. No. 1).)  After requesting and receiving additional time to answer the Complaint, (*see* Dkt. Nos. 22–23), Moving Defendants filed a pre-motion letter, seeking leave to move to dismiss Plaintiffs' initial Complaint, (*see* Ltr. from E. Kataev, Esq. (Sept. 18, 2023) (Dkt. No. 24)).  Plaintiffs responded a week later, notifying the Court they would be amending their Complaint.  (*See* Ltr. from K. Morales, Esq. (Sept. 25, 2023) (Dkt. No. 27); Dkt. No. 28.)  Meanwhile, Defendants Bingo Wholesale and Weiss answered the initial Complaint and asserted a Cross Claim against JDW, asserting that any potential recovery against them would result from JDW's breach of contract (thus entitling them to recover damages from JDW), and further demanding indemnification from JDW.  (*See* Dkt. No. 26 at 17–18.)

Plaintiffs filed their Amended Complaint on October 17, 2023. (*See* AC.) Defendants Bingo Wholesale and Weiss answered the Amended Complaint, again asserting the same Cross Claim against JDW. (*See* Dkt. No. 32 at 20–21.) Moving Defendants sought leave to move to dismiss the Amended Complaint, (*see* Ltr. from E. Kataev, Esq. (Oct. 31, 2023) (Dkt. No. 33)), to which Plaintiffs responded shortly thereafter, (*see* Ltr. from K. Morales, Esq. (Nov. 7, 2023) (Dkt. No. 34)). After holding a pre-motion conference, the Court adopted a briefing schedule. (*See* Dkt. (minute entry for Jan. 11, 2024); Dkt. No. 39.)

After seeking and receiving an extension, (*see* Dkt. Nos. 43–44), Moving Defendants filed their Motion on April 5, 2024, (*see* Not. of Mot.; Defs' Mem. in Supp. of Mot. ("Defs' Mem.") (Dkt. No. 46)). Plaintiffs filed their Opposition on May 17, 2024. (*See* Pls' Opp'n to Mot. ("Pls' Opp'n") (Dkt. No. 47).) Moving Defendants did not file a reply.

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

In the Amended Complaint, Plaintiffs collectively assert five causes of action—one arising under the FLSA and four arising under the NYLL.  (AC ¶¶ 95–123.)  With respect to the FLSA claim, Plaintiffs allege that Defendants failed to pay them and those similarly situated the overtime pay to which they are entitled under the FLSA (i.e., one and one-half times their regular hourly pay rate) for all hours worked beyond forty per workweek.  (*Id*. ¶ 96.)  As to the NYLL claims, Plaintiffs allege that Defendants failed to: pay overtime wages, (*id.* ¶¶ 102–08); timely pay wages, (*id.* ¶¶ 109–15); provide payroll notices, (*id*. ¶¶ 116–19); and provide wage statements, (*id.* ¶¶ 120–23).  Additionally, Plaintiff Huerta alleges that Defendants discriminated against him on account of his disability and failed to provide him with reasonable accommodations, in violation of the ADA and the NYSHRL.  (*See id.* ¶¶ 124–45.)

In support of their Motion, Moving Defendants assert that Plaintiffs failed to state a FLSA claim because Plaintiffs do not allege a single workweek in which they worked over forty hours and were not compensated for overtime, (Defs' Mem. 13), and because Plaintiffs do not sufficiently allege that Bissoon or Deane were "employers" under the FLSA, (*id.* at 15).  Further Moving Defendants argue that Huerta's ADA claim must be dismissed for failure to exhaust administrative remedies.  (*Id.* at 20–21.)  Finally, Moving Defendants assert that Plaintiffs should be denied leave to amend, (*id.* at 22–23), and urge this Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, (*id.* at 23–24).

 The Court will address Moving Defendants' arguments to the extent necessary to resolve the instant Motion.

1.  Plausibility of the FLSA Claim

"To state an FLSA wage claim, a plaintiff must allege that: (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive minimum and/or overtime wages." *See Anderson v. Hudson Nat'l Golf Club, Inc.*, No. 23-CV-522, 2024 WL 4241359, at *6–7 (S.D.N.Y. Sept. 19, 2024) (quoting *Hermida v. 101 Moronta Food Corp.*, No. 23-CV-4352, 2024 WL 3089962, at *2 (S.D.N.Y. June 20, 2024)); *see also Tackie v. Keff Enter., Inc.*, No. 14-CV-2074, 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014) (same); *Ramirez v. Sake II Japanese Rest., Inc.*, No. 20-CV-9907, 2023 WL 3354881, at *5 (S.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346768 (S.D.N.Y. May 10, 2023).

a. Overtime Claims

First, Moving Defendants argue that Plaintiffs failed to plausibly allege they worked overtime for which they were not compensated. (*See* Defs' Mem. 11–12.) The Court disagrees.

Under the FLSA, "no employer shall employ any [ ] employees . . . for a workweek longer than forty hours" unless the employee receives compensation for his employment in excess of forty hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *see also Anderson*, 2024 WL 4241359, at *11 (same). "[A] plaintiff must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). "A

plaintiff is not required to 'keep careful records and plead their hours with mathematical precision.'" *Fallon v. 18 Greenwich Ave., LLC*, No. 19-CV-9579, 2021 WL 1105066, at *5 (S.D.N.Y. Mar. 23, 2021) (quoting *Dejesus v. HF Mgmt. Servs. LLC*, 726 F.3d 85, 90 (2d Cir. 2013)); *see also Stewart v. Summit Health Mgmt., LLC*, No. 23-CV-4073, 2024 WL 3274687, at *4 (S.D.N.Y. July 1, 2024) (same); *Nam v. Ichiba Inc.*, No. 19-CV-1222, 2021 WL 878743, at *6 (E.D.N.Y. Mar. 9, 2021) (noting that a plaintiff "does not need to actually estimate the number of hours he [or she] worked in 'some or all workweeks'" (quoting *Dejesus*, 726 F.3d at 90)). "Instead, a plaintiff must provide 'sufficient factual allegations rather than a general and conclusory allegation as to the number of hours 'routinely' worked—whereby the [c]ourt can reasonably infer that there was indeed one or more particular workweek(s) in which the plaintiff suffered an overtime violation.'" *Fallon*, 2021 WL 1105066, at *5 (quoting *Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 496 (S.D.N.Y. 2016)).

With respect to the pleading standard applicable to claims for unpaid overtime under the FLSA, the Second Circuit recently clarified that "[s]o long as the complaint adequately alleges that [ ] each [plaintiff] worked more than forty hours each week they were employed . . . that is enough to state a claim under the FLSA and defeat a motion to dismiss." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 112 (2d Cir. 2023). Put another way, "[w]here [p]laintiffs plausibly allege that they *worked more than forty hours per week as part of their regularly scheduled workweek*, they have adequately stated a claim under the FLSA and *need not list the specific workweeks* during which they worked more than forty hours." *Id.* (emphases added).

The Court is unpersuaded by Moving Defendants' attempt to muddy this standard. As an initial matter, Moving Defendants do not cite to or acknowledge *Herrera* at all. Instead, they rely on a line of pre-*Herrera* Second Circuit cases to assert that Plaintiffs' allegations are

insufficient because "they each fail to allege a single workweek where they worked over forty (40) hours *and* that there was uncompensated time in excess of forty (40) hours." (Defs' Mem. 11–12 (emphasis in original) (citing *Lundy*, 711 F.3d at 114, *Nakahata*, 723 F.3d at 201, *DeJesus*, 726 F.3d at 89, *and Paleja v. KP NY Ops. LLC*, No. 21-CV-286, 2022 WL 364007, at *1–2 (2d Cir. Feb. 8, 2022)).) But—as *Herrera* made clear while discussing these same cases— that is not the pleading standard:

> *Lundy* and our other precedents require only that plaintiffs sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours. This pleading standard is unmet if all that plaintiffs allege is that at some undefined period in their employment they worked more than forty hours in a single week. Such an allegation would be far too vague and unhelpful for putting a defendant on notice of the alleged violation. The pleading standard is satisfied, however, if plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work, so that they were eligible for overtime during every week in which they worked their regular schedule. In that case, a plaintiff, as the Plaintiffs have done here, need only allege the period of time during which they were employed.

84 F. 4th at 116–17 (citation and internal quotation marks omitted). Applying this standard, the Second Circuit held that allegations such as "[p]laintiffs' regularly scheduled work hours consisted of five shifts each week, and that each shift lasted between eight and three-quarter hours and nine hours, amounting to between 43.75 hours and 45 hours of work per regular week," made out a "plausible claim of overtime" under the FLSA. *Id.* at 115 (citing *DeJesus*, 726 F.3d at 89).

So too here. Although Moving Defendants erroneously claim that the Amended Complaint "entirely fails to identify a single week in which any Plaintiff worked and was not paid at overtime compensation," (Defs' Mem. 13), instead, with one exception, each Plaintiff alleges that he/she worked over forty hours *each week* while employed by Defendants, (*see* AC ¶ 46 (Huerta alleging he worked approximately seventy-eight hours per week); *id.* ¶ 66 (Mera

alleging he worked approximately fifty-seven hours per week); *id.* ¶ 72 (Flores alleging he

worked approximately seventy-one hours per week)).  And although Borja alleges that she

worked approximately thirty-five and a half hours per week for the majority of her employment,

she also alleges three specific periods of time where she worked approximately fifty hours per

week.  (*Id.* ¶¶ 78, 80, 82.)  Further, Plaintiffs plausibly allege they received their base hourly rate

for *all* hours worked, including those worked in excess of forty hours.  (*Id.* ¶¶ 46, 68–69, 74,

85–86.)  Simply put, "[a]ccepting [Plaintiffs'] allegation as true and drawing all reasonable

inferences in [their] favor," as the Court must at this stage, *Herrera*, 84 F.4th at 116, Plaintiffs

have plausibly alleged unpaid-overtime claims because they have averred "that their regularly

scheduled workweek[s] . . . included more than forty hours of work, so that they were eligible for

overtime during every week in which they worked their regular schedule[,]" *Anderson*, 2024 WL

4241359, at *12 (quoting *Stewart*, 2024 WL 3274687, at *4); *see also Conklin v. United States

Postal Serv.*, No. 23-CV-7122, 2024 WL 4349452, at *3 (S.D.N.Y. Sept. 30, 2024) (finding

plaintiffs sufficiently pled an overtime claim where they alleged they worked "a regular work

week that ran Monday through Friday, from 8 am to 4 pm," but "were required to travel or attend

instruction outside of the 40-hour-per-week timeframe, bringing their total hours of work above

40 hours per week," and that the "additional hours of work were uncompensated"); *Montoya v.

Havana Cent. NY 2, LLC*, No. 23-CV-111, 2024 WL 874640, at *9 (S.D.N.Y. Jan. 8, 2024)

(determining the plaintiff "ha[d] pled a plausible overtime claim by alleging that he worked over

forty hours for each week of his employ but was paid a fixed weekly salary that did not

encompass overtime" (citation omitted)), *report and recommendation adopted*, 2024 WL 871206

(S.D.N.Y. Feb. 29, 2024); *Alarcon Adame v. Evir Corp.*, No. 18-CV-2969, 2019 WL 3287086, at

*1–3 (S.D.N.Y. July 22, 2019) (concluding a restaurant delivery worker met the applicable

pleading standard by alleging "the approximate start times, end times, and number of days per week worked" during the time he was employed, e.g., that "between June 2017 and October 2017, the [p]laintiff worked from approximately 3:00 p.m. until 11:00 p.m., six days per week, averaging 48 hours per week"); *Werst v. Sarar USA Inc.*, No. 17-CV-2181, 2018 WL 1399343, at *6 (S.D.N.Y. Mar. 16, 2018) (determining the plaintiff met her pleading burden where she alleged her "standard workweek was from 10:00 a.m. to 6:00 p.m., however, she routinely was required to work late, typically at least once or twice a week to 8:00 p.m. or 9:00 p.m.").[1]

b. Individual Employer Liability

Next, Moving Defendants assert that Plaintiffs do not plausibly allege that Bissoon and Deane are "employers" as defined by the FLSA. (*See* Defs' Mem. 13–15.)

The FLSA defines "employer," in pertinent part, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see Van Duser v. Tozzer Ltd.*, No. 23-CV-9329, 2024 WL 4635495, at *3 (S.D.N.Y. Oct. 31, 2024) (same). The Supreme Court has emphasized that this is an expansive definition with "striking

---

[1] The few pre-*Herrera* cases Moving Defendants rely upon are also factually distinguishable, (*see* Defs' Mem. 12), as in each case, plaintiffs failed to sufficiently allege that they worked more than forty hours per week, *see Paleja*, No. 21-286-CV, 2022 WL 364007, at *2 (2d Cir. Feb. 8, 2022) (affirming the dismissal of a complaint where plaintiff "sufficiently pleaded that he worked more than 40 hours a week," but insufficiently alleged he was "uncompensated for time worked in excess of the 40 hours" (internal quotation marks omitted)); *Lundy*, 711 F.3d at 109, 114–15 (affirming dismissal of complaint where one plaintiff failed to allege "how occasionally or how long," she worked overtime, or that she "was denied overtime pay in any such particular week," the second plaintiff "failed to allege that she was denied overtime pay in a week where she worked" shifts exceeding the 40-hour bar, and the third plaintiff "conceded . . . that he never worked over 40 hours in any given week"); *Nakahata*, 723 F.3d at 199, 201 (affirming dismissal where plaintiffs did not provide "sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week"); *Dejesus*, 726 F.3d at 89 (upholding dismissal of the complaint where the allegations were "no more than [a] rephrasing [of] the FLSA's formulation").

breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *see also Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 204 (S.D.N.Y. 2014) (same). "An individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case 'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [statute].'" *Olvera*, 73 F. Supp. 3d at 204 (quoting 29 C.F.R. § 791.2(a)).

"[W]hether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Barfield v. N.Y.C. Health & Hosp. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)); *see also Olvera*, 73 F. Supp. 3d at 205 (noting courts must look to "the circumstances of the whole activity" in determining economic reality). Accordingly, whether a defendant is an "employer" for FLSA purposes turns on "whether the person or entity possessed the power to control the workers in question, with an eye to the economic reality presented by the facts of each case." *Benitez v. Demco of Riverdale, LLC*, No. 14-CV-7074, 2015 WL 803069, at *1 (S.D.N.Y. Feb. 19, 2015) (explaining the definition of "employer" (internal quotation marks omitted)); *Wolman v. Cath. Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 299 (E.D.N.Y. 2012) ("[W]hether [an individual defendant] can be individually liable depends on whether [they] exercised sufficient control over [p]laintiffs to be considered their employer[s]" (citing *Barfield*, 537 F.3d at 143)), *aff'd in part, rev'd in part sub nom. Lundy*, 711 F.3d 106.

In assessing economic reality, the Second Circuit has articulated two tests to determine whether an employment relationship existed for the purposes of the FLSA. The first, the formal control test, asks "whether the alleged employer (1) had the power to hire and fire the employees,

(2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (internal quotation marks omitted); *see also Olvera*, 73 F. Supp. 3d at 205 (same). The second test analyzes various factors to determine whether a person or entity, even if lacking *formal* control, exercised "functional control" over an employee. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003). Under this test, courts look to the following relevant, though not exclusive, factors: "(1) whether the alleged employers' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [the] plaintiffs performed a discrete line job that was integral to the alleged employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employers or their agents supervised [the] plaintiffs' work; and (6) whether [the] plaintiffs worked exclusively or predominantly for the alleged employers." *Olvera*, 73 F. Supp. 3d at 205–06 (alterations and internal quotation marks omitted) (quoting *Zheng*, 355 F.3d at 72).

Neither test for employment is a "rigid rule," but instead provides "a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143 (internal quotation marks omitted); *see also Graziadio*, 817 F.3d at 422 (noting that "[n]o one of the four [formal control] factors standing alone is dispositive" (internal quotation marks omitted)). However, "[m]ere boilerplate allegations that an individual meets the various prongs of the economic reality test are 'insufficient' to survive

dismissal." *Savor Health, LLC v. Day*, No. 19-CV-9798, 2022 WL 912236, at *5 (S.D.N.Y. Mar. 29, 2022) (citing *Diaz v. Consortium for Worker Educ., Inc.*, No. 10-CV-01848, 2010 WL 3910280, at *4 (S.D.N.Y. Sept. 28, 2010)); *see also Imbarrato v. Banta Mgmt. Servs., Inc.*, No. 18-CV-5422, 2020 WL 1330744, at *3 (S.D.N.Y. Mar. 20, 2020) ("Notwithstanding the flexibility of the economic reality test, . . . a plaintiff must do more than recite the language of the test to plausibly allege that an individual defendant qualifies as an employer.").

As to Bissoon, Moving Defendants correctly assert that Plaintiffs have not sufficiently alleged that he was Plaintiffs' "employer." (Defs' Mem. 15.) Plaintiffs allege that Bissoon was an "officer[], director[], shareholder[], owner[], and/or person[] in control of JDW, who exercise[d] significant control over JDW's operations; ha[d] the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine[d] the rate and method of payment for employees; and maintain[ed] employment records." (AC ¶ 16.) Plaintiffs further allege that all Defendants—including Bissoon—"had the power to discipline and terminate Plaintiffs," (*id.* ¶ 20), "were responsible for compensating Plaintiffs," (*id.* ¶ 21), and required [Plaintiffs] to record [their] actual work hours on handwritten timesheets," (*id.* ¶¶ 47, 67, 73, 84).

These allegations are insufficient to establish Bissoon's liability. Indeed, apart from the boilerplate allegations listed above, the Amended Complaint is devoid of *any* details about Bissoon, let alone facts sufficient to establish the nature and degree of Bissoon's alleged control over Plaintiffs, or even that Bissoon had direct contact with any Plaintiff. *See Weng v. HungryPanda US, Inc.*, No. 19-CV-11882, 2022 WL 292799, at *6 (S.D.N.Y. Jan. 31, 2022) (dismissing claims against individual defendants where "[t]he [c]omplaint does not allege . . . that the [i]ndividual [d]efendants interacted with [p]laintiff, hired [p]laintiff, had the power to

fire [p]laintiff, or exercised any control over [p]laintiff in particular as opposed to HungryPanda employees in general"); *see Bao Guo Zhang v. Shun Lee Palace Rest., Inc*., No. 17-CV-00840, 2021 WL 634717, at *8 (S.D.N.Y. Feb. 16, 2021) (granting dismissal of claims against an individual defendant where "[p]laintiffs' assertion that [the defendant] was a shareholder and owner of Shun Lee Palace and Shun Lee West, by itself, does not establish employer status" and where "[o]ther than paraphrasing the four [formal control] factors, the Amended Complaint raises no additional factual grounds for [p]laintiffs' assertion that [the defendant] maintained active operational control over restaurant employees" (alterations adopted and internal quotation marks omitted)); *Bravo v. Established Burger One, LLC*, No. 12-CV-9044, 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013) (dismissing claims against individual defendants where "[p]laintiffs allege no specific facts, aside from the elements of the 'economic reality test,' to satisfy their pleading burden"); *see also Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013) ("Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status.").

Plaintiffs argue that Bissoon's liability is "well-[pled]," however, because of their allegations that, inter alia, he was responsible for setting Plaintiffs schedules, supervising their performance, and had the power to discipline and terminate them. (*See* Opp'n 17–18 (citing AC ¶¶ 19–22).) But as numerous courts in this Circuit have held, allegations such as these—which functionally restate the formal control test factors—are insufficient to survive a motion to dismiss. *See, e.g.*, *Fallon v. 18 Greenwich Ave., LLC*, No. 19 Civ. 9579, 2021 WL 1105066, at *4 (S.D.N.Y. Mar. 23, 2021) (concluding plaintiffs failed to plead employer liability where the complaint contained "identical, boilerplate allegations" that each individual defendant

"determine[d] the wages and compensation of the employees of [d]efendants, including

[p]laintiffs, establishe[d] the schedules of the employees, maintain[ed] employee records, and

ha[d] the authority to hire and fire employees"); *Huer Huang v. Shanghai City Corp.*, 459 F.

Supp. 3d 580, 588 (S.D.N.Y. 2020) (finding that identical allegations that all defendants "had the

power to hire and fire employees," "supervise and controlled employee work schedules,"

"determined the rate and method of payment," and "maintained employee records" simply

"mirror, and do not add factual content to, the [formal control] factors," and "cannot make out a

claim for relief"); *Ruixuan Cui v. East Palace One, Inc*., No. 17-CV-6713, 2019 WL 4573226, at

*7 (S.D.N.Y. Sept. 20, 2019) (dismissing claims against individual defendants where plaintiffs

"merely recite[] the elements of the economic reality test, together with conclusory assertions as

to the individual defendants' personal, active, and daily management of the operations of the

corporations that, in turn, allegedly operate the restaurants" (internal quotation marks omitted

and alterations adopted)).[2]

---

[2] The cases cited by Plaintiffs are unavailing.  In *Winfield v. Babylon Beauty School of Smithtown Inc.*, 89 F. Supp. 3d 556 (E.D.N.Y. 2015), plaintiffs' "somewhat vague" complaint alleged that the individual defendants were "owners, officers, and/or directors of one or more of the Beauty Schools" at issue.  *Id.* at 569 (alterations adopted and internal quotation marks omitted).  But in addition, plaintiffs provided documentation supporting the individual defendants' ownership of the schools and further alleged that the individual defendants were specifically involved in a "decision not to compensate students for working in the Beauty Schools' clinics."  *Id.*  Similarly, in *Savor Health, LLC*, the court found that plaintiff successfully pled employer liability where, in addition to "a recitation of the [economic reality] factors," the complaint contained "other assertions . . . that add[ed] factual content to these allegations."  2022 WL 912236, at *5.
    And while the courts in the additional cases Plaintiffs rely on did find conclusory allegations like the ones here sufficient to establish individual liability, they did so in the context of motions for default judgment and thus construed plaintiffs' allegations as "admissions . . . against the defaulting party."  *See Rahman v. Red Chili Indian Cafe, Inc.*, No. 17-CV-5156, 2021 WL 2003111, at *1–2 (S.D.N.Y. May 19, 2021); *Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL 6585810, at *4, 9 (E.D.N.Y. Sept. 30, 2016) (collecting cases), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).

Deane, however, is a different story.  While the Amended Complaint contains the same boilerplate allegations about Deane as about Bissoon, it also contains additional allegations, specifically, that: Huerta contacted Deane to discuss his return to work, (*see* AC ¶¶ 52–54); Deane initially informed Huerta he no longer had a position with Defendants, before reconsidering once told that his actions might be discriminatory, (*id.* ¶¶ 55–56); Deane was also in direct contact with Borja, who was both Huerta's wife and an employee at the Monsey Location, (*id.* ¶ 57); and that Deane was involved in the offer to transfer Huerta to the Brooklyn Location before Huerta's subsequent termination, (*see id.* ¶ 58 ("Deane texted Huerta reiterating that he did not have a job opening for him at the Monsey Location" but "offered to transfer Huerta to the Brooklyn Location").)  While somewhat thin, these allegations, coupled with the boilerplate allegations discussed above, are sufficient to plausibly infer that Deane had direct contact with and operational control over employees at the Monsey Location—i.e., all Plaintiffs—and thus plausibly suggest that Deane is an "employer" under the FLSA.  *See Savor Health, LLC*, 2022 WL 912236, at *5 (finding employer liability where, in addition to "a recitation of the [economic reality] factors," the complaint contained allegations that the individual defendant "directed the method in which [plaintiff] performed her work," "control[led] every aspect of [the company,] including managing its cashflow," and "had the power to make decisions on behalf of [the company] regarding wages owed to employees"); *Imbarrato*, 2020 WL 1330744, at *4 (finding plaintiffs sufficiently plead individual liability where plaintiffs "include[d] a number of admittedly formulaic statements mirroring the language of the economic reality test," but also "supplement[ed] those statements with factual allegations related to the nature and degree of the [i]ndividual [d]efendants' operational control over the terms and conditions of their employment"); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*,

22

No. 1:16-CV-5735-GHW, 2017 WL 2600051, at *4 (S.D.N.Y. June 15, 2017) (finding allegations sufficient to withstand a motion to dismiss where—in addition to boilerplate allegations that the individual defendant was an owner/operator and met the economic control test—plaintiffs alleged the defendant hired one of the plaintiffs, dispatched plaintiffs to deliver customer orders, and made weekly visits to the restaurant).

In sum, Plaintiffs have plead sufficient allegations to state a claim against Deane, but not Bissoon. Accordingly, the Motion is granted as to Bissoon alone.

2. <u>Huerta's ADA Claim</u>

Moving Defendants also argue that Huerta failed to exhaust his administrative remedies, as he did not wait 180 days from the filing of his EEOC claim to bring this Action, and thus, his ADA claim must be dismissed. (Defs' Mem. 15–22.) The Court disagrees.

"As a condition precedent to bringing a claim under the ADA, a plaintiff must show that she exhausted her administrative remedies." *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *5 (S.D.N.Y. July 2, 2020) (quoting *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 174 (E.D.N.Y. 2017)). "[T]he purpose of the exhaustion requirement . . . is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Lebowitz*, 407 F. Supp. 3d at 174 (quoting *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985)). Exhaustion typically entails filing a charge before the EEOC or a complaint with a relevant state or local agency within 300 days of the alleged discriminatory conduct. *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam); *Hernandez v. Premium Merch. Funding One, LLC*, No. 19-CV-1727, 2020 WL 3962108, at *3 (S.D.N.Y. July 13, 2020) (same).

Once a charge has been filed with the EEOC, the agency must provide notice to the employer "within ten days, and shall make an investigation thereof." 42 U.S.C. § 2000e-5(b). If the EEOC determines that there is "reasonable cause to believe that the charge is true," it must "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion," 42 U.S.C. § 2000e-5(b), or may "bring a civil action" against the employer in court, 42 U.S.C. § 2000e-5(f)(1); *see also Hernandez*, 2020 WL 3962108, at *3 (same). If the EEOC concludes "there is n[o] reasonable cause to believe that the charge is true," the EEOC must dismiss the charge and notify the complainant of her right to sue in court. 42 U.S.C. §§ 2000e-5(b), f(1); 29 C.F.R. § 1601.28. Regardless of whether the EEOC acts on a charge, the EEOC must issue a right-to-sue notice 180 days after the filing of that charge. *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28. A complainant then has 90 days to bring suit against the employer. 42 U.S.C. § 2000e-5(f)(1).

Only after the 180 days have elapsed may the charging party pursue his or her claims in court. *Gibb v. Tapestry, Inc.*, No. 18-CV-6888, 2018 WL 6329403, at *4 (S.D.N.Y. Dec. 3, 2018). However, the EEOC has promulgated a regulation allowing the agency to issue "early" right-to-sue letters *before* 180 days have elapsed, provided that: (1) the respondent is a non-governmental entity, and (2) a designated official from the EEOC "has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." *Hernandez*, 2020 WL 3962108, at *3 (quoting 29 C.F.R. § 1601.28(a)(2)); *Gibb*, 2018 WL 6329403, at *4 (same).

Moving Defendants argue that because Huerta filed this suit after receiving a right-to-sue letter—and *not* after 180 days had elapsed since the filing of the initial charge—he has failed to

exhaust his administrative remedies.  Relying predominately on out-of-Circuit case law, Moving Defendants urge this Court to hold that early right-to-sue letters are invalid and contrary to Congressional intent.  (*See* Defs' Mem. 16–22.)  Plaintiffs, in turn, argue that nothing in the statutory language prohibits early right-to-sue letters, and note that courts in this District have consistently upheld their validity.  (*See* Pls' Opp'n 20–24.)

Although the Second Circuit has not weighed in on this precise issue, many other Circuits have, the majority of which "agree that the EEOC appropriately adopted the regulation allowing it to issue right to sue letters *prior* to the expiration of 180 days on the basis of administrative convenience."  *Mwangi v. Passbase, Inc*., No. 21- CV-6728, 2022 WL 2133734, at *4 (S.D.N.Y. June 14, 2022) (collecting cases) (emphasis added).  *Compare Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1275 (10th Cir. 2001) (holding that the issuance of an early right-to-sue letter does not bar Title VII claims); *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061 (11th Cir. 1994) (same), *Saulsbury v. Wismer & Becker, Inc.*, 644 F.2d 1251, 1257 (9th Cir. 1980) (same), *with Martini v. Fed. Nat.'l Mortg. Ass'n*, 178 F.3d 1336, 1347 (D.C. Cir. 1999) (barring a Title VII claim because the right to sue letter was issued before 180 days).

Similarly, while there is a split among courts in this District, the majority have upheld the validity of early right-to-sue letters.  *Compare Germain v. Nielsen Consumer, LLC*, 655 F. Supp. 3d 164, 179 (S.D.N.Y. 2023) (holding that the issuance of an early right-to-sue letter does not bar a Title VII suit); *Mwangi*, 2022 WL 2133734, at *4 (same); *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2021 WL 4124616, at *13 (S.D.N.Y. Sept. 9, 2021) (same); *Areu v. Fox News Network, LLC*, No. 20-CV-8678, 2021 WL 4124226, at *7–8 (S.D.N.Y. Sept. 9, 2021) (same); *Hernandez*, 2020 WL 3962108, at *6 (same); *Hussein v. Pierre Hotel*, No. 99-CV-2715, 2000 WL 776920, at *3–4 (S.D.N.Y. June 14, 2000) (same); *Palumbo v. Lufthansa German*

*Airlines*, No. 98-CV-5005, 1999 WL 540446, at *2 (S.D.N.Y. July 26, 1999) (same); *with Gibb*, 2018 WL 6329403, at *5 (concluding that § 2000e-6(f)(1) "explicitly requires that one of two events occur before the issuance of a right-to-sue letter; either (i) the EEOC must dismiss the complaint; or (ii) 180 days must have run from the filing of the charges with the EEOC during which time the EEOC has taken no action" and thus holding that "the early right-to-sue letter is invalid"); *Stetz v. Reeher Enters., Inc.*, 70 F. Supp. 2d 119, 121–25 (N.D.N.Y. 1999) (same); *Rodriguez v. Connection Tech., Inc.*, 65 F. Supp. 2d 107, 110 (E.D.N.Y. 1999) (same); *Henschke v. New York Hosp.-Cornell Med. Ctr.*, 821 F. Supp. 166, 169–71 (S.D.N.Y. 1993) (same).

The Court is persuaded by the analysis employed by the majority of courts to consider this issue. First, contrary to Defendants' assertion that allowing early right-to-sue letters would undermine "Title VII's clear requirement that a charge is to remain pending with the EEOC for 180 days," (*see* Defs' Mem. 17), there is nothing in the plain text of the statute *prohibiting* the EEOC's early notice regulation. Instead, "[i]t simply states that if one of two events occurs—the EEOC finds no probable cause and dismisses the case or the 180-day mark is reached without a suit being filed—the EEOC must issue the letter." *Mwangi*, 2022 WL 2133734, at *4. In other words, because "[t]his does not mean that these are the *only* two situations in which it can issue a right to sue," issuing early right-to-sue letters does not conflict with the statute's text. *Id.*; *see also Hernandez*, 2020 WL 3962108, at *5 ("[T]he word 'if['] together with 'shall' does not bar the conclusion that even when neither of the two conditions occurs, the Commission still *may* issue a notice of right to sue." (quoting *Figueira v. Black Ent. Television, Inc.*, 944 F. Supp. 299, 306 (S.D.N.Y. 1996))).[3]

---

[3] Indeed, as one court in this District noted, "[e]very court of appeals that has considered Section 2000e-5(f)(1) has agreed that it does *not* bar the issuance of right-to-sue letters before the

Second, as Plaintiffs' point out, (Pls' Opp'n 22), 29 C.F.R. § 1601.28(a)(2) also does not conflict with Section 2000e-5(f)(1)'s purpose—i.e., "ensur[ing] that parties are not required to wait indefinitely for administrative action," *Hernandez*, 2020 WL 3962108, at *6 (quoting *Huang v. Gruner + Jahr USA Pub.*, No. 99-CV-5058, 2000 WL 640660, at *2 (S.D.N.Y. May 17, 2000)).  To the contrary, prohibiting the issuance of a right-to-sue letter before exactly 180 days—regardless of when the EEOC concludes their investigation, or if the EEOC determines an investigation *cannot* be concluded in that time frame—would instead seem to frustrate Congress' intent.  *See Mwangi*, 2022 WL 2133734, at *4 (noting that because plaintiff's early right-to-sue letter "explicitly stated that [the EEOC] had broadly reviewed all of the circumstances of the case and determined that issuing the notice was warranted at this time because it would not be able to investigate any further[,] . . . [f]ormalistically abiding by this timeframe would not have served the goals of the commission or of [plaintiff]"); *see also Figueira*, 944 F. Supp. at 304 ("[T]he legislative history shows that Congress was most concerned with insuring the prompt resolution of discrimination claims, and the 180-day limit was meant to be an outer limit to prevent claims from stagnating at the EEOC and to protect claimants from administrative delay.").

Accordingly, because the Court concludes that Huerta's early right-to-sue letter was valid, it finds that he properly exhausted his administrative remedies before filing suit.[4]

---

expiration of the 180-day period following the filing of a charge," including "even the D.C. Circuit Court of Appeals, which has held that the EEOC's regulation permitting 'early' right-to-sue letters is invalid" but "agrees that Section 2000e-5(f)(1) does not unambiguously bar them." *Germain*, 655 F. Supp. at 178 (citing *Martini*, 178 F.3d at 1344); *see id.* (collecting cases).

[4] Additionally, Moving Defendants' argument that because they "never received notice of Huerta's charge" or early right-to-sue letter, "the EEOC could not have investigated the claim" or "even attempted conciliation," is unavailing.  (*See* Defs' Mem. 20–21.)  The EEOC's failure

3.  Supplemental Jurisdiction

Finally, Moving Defendants argue the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.  (Defs' Mem. 23–24.)

"District courts may decline to exercise supplemental jurisdiction over a claim . . .  if the district court has dismissed all claims over which it has original jurisdiction."  *See* 28 U.S.C. § 1367(c)(3).  In light of the Court's dismissal of Plaintiffs' federal claims against Bissoon, the Court declines to exercise supplemental jurisdiction over the remaining state law claims insofar as they pertain to Bissoon.  *See Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003))); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) (summary order) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims."); *Young v. Suffolk County*, 922 F. Supp. 2d 368, 397–98 (E.D.N.Y. 2013) (declining to exercise supplemental jurisdiction over state-law counterclaim after dismissing all federal claims).

---

to comply with a statutory duty does not, by itself, "prejudice a plaintiff's ability to maintain a Title VII claim against those respondents in federal court."  *Robinson v. Macy's*, 2014 WL 6997598, at *8 (S.D.N.Y. Dec. 5, 2014) (collecting cases); *see also Hernandez*, 2020 WL 3962108, at *4 (concluding that although the EEOC did not provide a notice of charge within ten days of plaintiff's filing, "this deficiency alone does not bar a plaintiff's ability to pursue an action in federal court").

However, because federal claims still exist as to the remaining Defendants, "there is no basis upon which the Court may decline to exercise supplemental jurisdiction" over the rest of Plaintiffs' state law claims. *Melendez v. New York Foundling, Inc.*, No. 17-CV-6162, 2019 WL 1084776, at *6 (S.D.N.Y. Mar. 7, 2019).

### III. Conclusion

For the foregoing reasons, the Motion is granted in part and denied in part. In sum, the Motion is granted as to Plaintiffs' FLSA claims against Bissoon and is denied as to all other claims and all other Moving Defendants. Because this is the first adjudication on the merits of Plaintiffs' FLSA claim against Bissoon, its dismissal is without prejudice.

If Plaintiffs wish to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above with respect to the FLSA claim asserted against Bissoon, Plaintiffs must do so within thirty days of the date of this Opinion & Order. There will be no extensions. Plaintiffs are advised that the second amended complaint will replace, not supplement, the now-dismissed portion of the Amended Complaint, and therefore must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to timely file a second amended complaint, the claims against Bissoon may be dismissed with prejudice.

The Court will hold a telephonic conference in this case on May 6, 2025, at 10:30 AM.

Finally, the Clerk of the Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 45.)

SO ORDERED.

DATED:     March 3, 2025
               White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

29