UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOSE HUERTA, VINICIO MERA, JOSE FLOREZ, and ELVIA BORJA, *individually and on behalf of all others similarly situated,*

Plaintiffs,

-against-

J.D. WORKFORCE, INC., MARAV USA LLC d/b/a
BINGO WHOLESALE, HAMWATTIE BISSOON, STEVEN DEANE, and DAVID WEISS,

Defendants.
-------------------------------------------------------------X

**Case No.: 7:23-cv-5382 (KMK) (AEK)**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFAULT JUDGMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

RELEVANT BACKGROUND ........ 3

A. JD Workforce and Deane Previously Appeared and Actively Litigated the Case ........ 3

B. The Communication Breakdown, Mediation History, and Clerk Defaults ........ 4

C. Counsel Repeatedly Attempted to Reestablish Communications and Is Seeking to Avoid Irreversible Prejudice While Evaluating Withdrawal. ........ 5

LEGAL STANDARD ........ 6

ARGUMENT ........ 8

I. THE CLERK'S ENTRIES OF DEFAULT SHOULD BE SET ASIDE FOR GOOD CAUSE UNDER RULE 55(c) ........ 8

A. The Record Does Not Show a Strategic Abandonment of the Defense; in Any Event, Willfulness Is Not Dispositive. ........ 8

B. Plaintiffs and the Bingo Defendants Will Not Suffer Cognizable Prejudice from Merits Adjudication. ........ 9

C. JD Workforce and Deane Have Multiple Potentially Meritorious Defenses ........ 10

D. The Balance of Equities Strongly Favors a Prompt, Conditioned Return to the Merits. 14

II. PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT SHOULD INDEPENDENTLY BE DENIED OR DEFERRED. ........ 14

A. Default Does Not Excuse the Court from Testing Each Cause of Action as a Matter of Law. ........ 14

B. Adjudicating Liability Against Only the Defaulting Defendants Risks Inconsistent Results in a Joint-Employer Case ........ 15

III. THE BINGO DEFENDANTS' CONTRACTUAL-INDEMNIFICATION DEFAULT APPLICATION SHOULD ALSO BE DENIED, AND ECF NO. 90 SHOULD BE SET ASIDE ........ 16

A. The Same Rule 55(c) Factors Favor Vacatur of the Crossclaim Default ........ 16

B. Bingo's Own Crossclaim Pleads Liability for Plaintiffs' Recovery as Conditional on Plaintiffs Prevailing, and the Contract Must Control .......... 16

C. Any Claimed Duty to Defend or Attorneys' Fees Depends on the Exact Contract Language, and First-Party Enforcement Fees Require Unmistakable Clarity. .......... 17

D. The Crossclaim's Employment Allegations Further Counsel Against Default Findings That Could Conflict with the Main Action. .......... 18

IV. ALTERNATIVELY, ANY DEFAULT RELIEF SHOULD BE NARROWLY LIMITED. 18

CONCLUSION .......... 19

**PRELIMINARY STATEMENT**

Plaintiffs ask the Court to convert a pleading lapse into an immediate adjudication of liability on five (5) wage-and-hour claims against J.D. Workforce, Inc. ("JD Workforce") and Steven Deane ("Deane"), and two disability discrimination claims asserted by Jose Huerta. See ECF No. 91. The Bingo Defendants, Marav Monsey LLC d/b/a Bingo Wholesale and David Weiss, separately seek a default judgment against JD Workforce on their contractual-indemnification crossclaim. See ECF Nos. 90, 92, 93, 94, 95, 97. The Court should decline both requests, set aside the Clerk's entries of default under Rule 55(c), and restore the case to the merits on prompt conditions.

This is not a case in which defendants were served and chose never to appear. JD Workforce and Deane appeared through counsel, litigated a motion to dismiss, pursued an interlocutory appeal, participated in this case over an extended period of time, and asserted defenses before a serious communication breakdown developed between counsel and the corporate principal through whom counsel had been receiving instructions.

The Second Amended Complaint was filed on April 2, 2025. See ECF No. 50. No responsive pleading was filed by JD Workforce and Deane. Counsel does not minimize that lapse. But the record, including counsel's declaration, shows repeated attempts to reestablish communications, repeated warnings that withdrawal and default could follow, and a contemporaneously documented family bereavement affecting the principal. The lapse was not a calculated litigation strategy to concede liability. Once default certificates and the Order to Show Cause made the danger immediate, counsel acted to preserve the Defendants' rights while continuing efforts to make contact.

Rule 55(c)'s "good cause" inquiry is deliberately more forgiving than the standard for vacating a final judgment.

The Second Circuit requires consideration of willfulness, prejudice, and the existence of a meritorious defense, against the background rule that defaults are disfavored and doubts should be resolved in favor of adjudication on the merits. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-98 (2d Cir. 1993). Most importantly here, the Second Circuit recently confirmed that even an assumed finding of willfulness does not end the analysis where the adversary has not shown cognizable prejudice and the defaulting party presents potentially meritorious defenses. See Henry v. Oluwole, 108 F.4th 45, 52-55 (2d Cir. 2024). Plaintiffs cannot identify lost evidence, unavailable witnesses, fraud, collusion, or any comparable impairment. Their claims remain actively litigated against the Bingo Defendants. The Clerk's defaults themselves are recent: August 18 and 21, 2026. See ECF Nos. 80, 81, 90. Thus, Defendants acted immediately to address the default.

And the Defendants' defenses are not merely generic. Plaintiffs' ADA claim cannot, as a matter of controlling Second Circuit law, support Title I damages liability against Deane individually. See Yerdon v. Poitras, 120 F.4th 1150, 1157 (2d Cir. 2024). The overtime and employer-status claims turn on contested facts concerning hours, wage calculations, supervision, and operational control; indeed, the active Bingo Defendants deny Plaintiffs' joint-employer allegations. See ECF No. 61. The remedies on the NYLL frequency-of-pay claim were materially limited by the 2025 amendment to Labor Law section 198(1-a), which applies to pending actions. The Court must also independently determine Article III standing for the wage-notice and wage-statement claims under Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 307-10 (2d Cir. 2024).

And any putative class or collective liability cannot be established merely by default without the safeguards required by Rule 23 and 29 U.S.C. § 216(b).

The Bingo crossclaim supplies an additional reason to vacate the certificates of default. Its current pleading alleges that the contractual indemnity obligation arises from the parties' Employment Agency Agreement and, as to liability for Plaintiffs' recovery, expressly pleads that "[i]f the Plaintiffs prevail" against Bingo, JD Workforce's alleged contractual breach will have caused that recovery. See ECF No. 61 at 20-21. The scope and timing of contractual indemnification depend on the actual contract language and the disposition of the underlying claims. New York law permits, at most in appropriate circumstances, conditional indemnification before an indemnitee has paid the underlying judgment; it does not transform contingent indemnity into present damages. See McCabe v. Queensboro Farm Prods., Inc., 22 N.Y.2d 204, 208 (1968); Orlikowski v. Cornerstone Cmty. Fed. Credit Union, 55 A.D.3d 1245, 1248-49 (4th Dept. 2008). Any request for fees incurred prosecuting the crossclaim itself also requires unmistakably clear contractual language. See Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491-92 (1989).

The appropriate remedy is therefore straightforward: vacate the Clerk's entries at ECF Nos. 80, 81, and 90; deny the pending default applications; require JD Workforce and Deane to answer promptly; and impose reasonable case-management conditions if the Court considers them appropriate.

## RELEVANT BACKGROUND

### A. JD Workforce and Deane Previously Appeared and Actively Litigated the Case.

Plaintiffs commenced this wage-and-hour and disability action in June 2023. JD Workforce and Deane appeared through counsel and did not treat the litigation as abandoned. They litigated

a motion to dismiss directed to the prior pleading. The Court decided that motion on March 3, 2025. See ECF No. 48.

JD Workforce and Deane thereafter pursued an interlocutory appeal to the Second Circuit. The Court of Appeals ultimately dismissed the appeal for lack of appellate jurisdiction, and the mandate returned the matter to this Court. Thus, whatever the present default, it followed substantial merits-based activity; it did not arise from a defendant's refusal ever to participate.

Plaintiffs filed the Second Amended Complaint on April 2, 2025. See ECF No. 50. It asserts: (1) FLSA overtime; (2) NYLL overtime; (3) NYLL section 191 frequency-of-pay; (4) NYLL section 195(1) wage-notice; (5) NYLL section 195(3) wage-statement; (6) Huerta's ADA disability discrimination/failure-to-accommodate claim; and (7) Huerta's NYSHRL disability claim. Plaintiffs allege that JD Workforce, Bingo, Deane, and Weiss were joint employers. See, e.g., ECF No. 50 ¶¶ 14-18, 22-26. They also allege a putative FLSA collective and Rule 23 class. Id. ¶¶ 27-43.

The Bingo Defendants answered the Second Amended Complaint and deny numerous allegations central to Plaintiffs' theory, including joint-employer, collective, class, and merits allegations. See ECF No. 61. The same underlying employment relationship is therefore being litigated actively against parties whom Plaintiffs themselves allege to be joint employers.

### B. The Communication Breakdown, Mediation History, and Clerk Defaults.

The case was referred to mediation. See ECF No. 66. As reflected in the parties' later submissions and in the accompanying Declaration of Emanuel Kataev ("Kataev Decl."), communications between counsel and the JD Workforce principal had deteriorated materially. Counsel advised the other parties that his clients were unresponsive and that he anticipated he might have to seek leave to withdraw, while continuing efforts to reach them. See ECF No. 69;

see also Kataev Decl. ¶¶ 9-19. The Court thereafter authorized Plaintiffs to pursue default procedures. See ECF No. 69.

On August 12, 2026, Plaintiffs advised the Court that JD Workforce and Deane had not answered the Second Amended Complaint and had not participated in the mediation scheduling process; the Court authorized Plaintiffs to seek default in accordance with the applicable rules. See ECF No. 75. The Clerk entered defaults against JD Workforce and Deane on August 18, 2026. See ECF Nos. 80, 81. On August 21, 2026, the Clerk separately entered default against JD Workforce on the Bingo Defendants' crossclaim. See ECF No. 90.

On August 24, 2026, the Court issued Plaintiffs' Order to Show Cause. See ECF No. 91. Plaintiffs seek a liability-only default against JD Workforce and Deane on Counts One through Five and, as to Huerta, on Counts Six and Seven, with damages to be determined later. Id. On August 25, the Bingo Defendants filed a separate default application on their contractual-indemnification crossclaim. See ECF Nos. 92, 93, 94, 95; see ECF No. 97. The Court has adjourned the default hearing to September 17, 2026 at 2:00 p.m., with opposition due September 14 and reply due September 16. See ECF No. 97.

### C. Counsel Repeatedly Attempted to Reestablish Communications and Is Seeking to Avoid Irreversible Prejudice While Evaluating Withdrawal.

The relevant factual details are set forth in the accompanying Kataev Declaration. In substance, counsel's ordinary communications concerning JD Workforce were through corporate principal Hamwattie Bissoon. See Kataev Decl. ¶¶ 6-9. Counsel understood that material developments concerning Deane would be relayed through Bissoon. Id. Counsel does not presently have a reliable direct contact channel for Deane and, on August 24, 2026, specifically asked the principals to provide Deane's contact information so that counsel could advise him directly about the default proceedings since Bissoon has not been responsive. Id. ¶¶ 24-26.

Counsel made repeated written and other follow-up efforts over many months. Id. ¶¶ 10-26.

The communications included explicit warnings that continued nonresponsiveness could require counsel to seek leave to withdraw, that default could follow, and that the matter required immediate attention. Id. A material circumstance during this period was the death of Bissoon's father-in-law. Id. ¶¶ 9-12. Counsel understood the family to be going through a difficult period and initially continued outreach rather than immediately seeking withdrawal. Id. Counsel does not offer bereavement as a blanket excuse for every later missed deadline; it is relevant context in assessing whether the lapse reflected a calculated decision to concede liability.

Counsel anticipates that, if reliable communications cannot be reestablished, he may have to seek leave to withdraw under the applicable rules. Id. ¶ 26. He is reluctant to do so precipitously because JD Workforce, as a corporation, cannot litigate *pro se*, and because counsel has substantial concern that Deane may not actually know the current status of the case. Id. ¶¶ 24-27.

The present opposition is intended to prevent a recent pleading default from hardening into an adjudication of liability before those representation and notice problems can be addressed.

## LEGAL STANDARD

Rule 55(c) provides that a court "may set aside an entry of default for good cause." See Fed. R. Civ. P. 55(c). Because no final default judgment has been entered, Rule 55(c), not Rule 60(b), governs. The Second Circuit has long emphasized that Rule 55(c) is applied generously because default judgments are an extreme remedy and disputes should, where possible, be decided on their merits. See Enron, 10 F.3d at 95-96; see also Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 171, 174 (2d Cir. 2001).

The principal factors are (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether the defaulting party presents a meritorious defense. See Henry, 108 F.4th at 52; see also New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005).

Courts may consider equitable factors as well, including whether a lesser sanction would be effective. Enron, 10 F.3d at 96. Willfulness requires conduct more culpable than mere negligence or carelessness. See Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 60-61 (2d Cir. 1996). A meritorious defense need not be proved conclusively at this stage; the movant must present facts or legal grounds that, if established, could constitute a complete or substantial defense. See Enron, 10 F.3d at 98.

Even when a party defaults, a plaintiff is not entitled to judgment as of right; the Court must determine whether the well-pleaded factual allegations establish liability as a matter of law; a default does not admit conclusions of law. See Henry, 108 F.4th at 55-57; see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). This Court has previously applied that principle to deny default judgment where the pleaded claim was legally deficient. See Graham v. HSBC Mortg. Corp., No. 18-CIV.-4196 (KMK), 2022 U.S. Dist. LEXIS 77595, at *1, 11-12 (S.D.N.Y. Apr. 28, 2022).

That independent review is particularly important where fewer than all defendants are in default. This Court's default procedures specifically require the moving party to address whether liability or damages can appropriately be adjudicated before resolution of the rest of the action. See Individual Rules of Practice for Default Judgment Proceedings ¶ 2(c)(ii) (Aug. 14, 2019). Both the Supreme Court and the Second Circuit caution against logically inconsistent adjudications among related defendants. See Henry, 108 F.4th at 54-56; see also Frow v. De La Vega, 82 U.S. (15 Wall.) 552, 554 (1872).

Rule 54(b) narrows Frow's categorical reach, but the risk of directly inconsistent liability findings remains a powerful reason to defer default judgment or set aside a recent default.

**ARGUMENT**

## I. THE CLERK'S ENTRIES OF DEFAULT SHOULD BE SET ASIDE FOR GOOD CAUSE UNDER RULE 55(c).

### A. The Record Does Not Show a Strategic Abandonment of the Defense; in Any Event, Willfulness Is Not Dispositive.

The Court need not approve the missed deadline to conclude that default judgment is disproportionate. JD Workforce and Deane had already appeared and litigated substantial issues. The omission of an answer occurred against a backdrop of appellate activity followed by a severe communication breakdown between counsel and the corporate principal. See Kataev Decl. ¶¶ 4-26. Counsel repeatedly sought instructions and warned of default and possible withdrawal. Id. When the Court's default process became imminent, counsel again warned the principals, sought Deane's direct contact information, and now moves to preserve the defense of his clients. Id. ¶¶ 13-28. These facts are inconsistent with a deliberate litigation tactic to concede the merits and later seek a do-over.

The bereavement described in counsel's declaration should be considered for what it is: a mitigating circumstance bearing on the deterioration of communications. Counsel understood that the corporate principal's father-in-law had died and that the family was going through a difficult period. See Kataev Decl. ¶¶ 9-12. The defense does not contend that this event excused every later deadline or eliminated counsel's obligations. It does, however, make the history materially different from a calculated refusal to defend after repeated merits defeats.

To the extent the Court concludes the delay became willful because the clients remained unreachable for too long, that does not resolve Rule 55(c).

Henry is particularly instructive. There, the Second Circuit emphasized that the three (3) factors must be evaluated together and held that the district court abused its discretion by refusing relief where prejudice was absent and a meritorious defense existed, even while assuming willfulness. See 108 F.4th at 52-55. The same approach is warranted here. Any culpability can be addressed through conditions and firm deadlines rather than a liability judgment, the ultimate sanction for a default.

**B. Plaintiffs and the Bingo Defendants Will Not Suffer Cognizable Prejudice from Merits Adjudication.**

Prejudice under Rule 55(c) means more than having to litigate a case or experiencing delay; the Second Circuit looks for concrete impairment such as loss of evidence, increased discovery difficulties, or greater opportunity for fraud or collusion. See Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983); see also Henry, 108 F.4th at 52-54; Enron, 10 F.3d at 98. No such showing has been made here.

Plaintiffs' claims are still being litigated against the Bingo Defendants. The relevant factual record – payroll practices, hours, workplace supervision, communications concerning Huerta's return to work, and the parties' respective roles – is necessarily implicated in the claims that remain active. Nothing in the default submissions identified in the docket establishes that witnesses have disappeared or evidence has been destroyed because JD Workforce and Deane failed to answer the Second Amended Complaint. The default certificates were entered only in August 2026, just this month, and this request for relief follows immediately in response to the default applications.

The Bingo Defendants likewise suffer no Rule 55 prejudice from litigating the crossclaim they pleaded. Their underlying liability to Plaintiffs remains disputed; their own Answer denies numerous allegations of wrongdoing and joint employment. See ECF No. 61.

Any contractual-indemnification issues can be litigated in the same action. Requiring proof of the contract's actual terms and of any conditions to indemnification is not cognizable prejudice; it is the ordinary consequence of merits adjudication.

### C. JD Workforce and Deane Have Multiple Potentially Meritorious Defenses.

#### 1. The ADA claim cannot support individual Title I liability against Deane.

Plaintiffs ask for default liability against Deane on Huerta's Sixth Cause of Action under the ADA. See ECF No. 91. That relief is unavailable as a matter of law. In Yerdon v. Poitras, the Second Circuit held that Title I of the ADA does not provide for damages liability against individual employees. See 120 F.4th at 1157. Deane therefore has a complete legal defense to Count Six insofar as it seeks Title I damages against him personally. Default cannot supply a cause of action Congress did not create.

The statutory employer threshold further underscores why the ADA claim should not be mechanically reduced to default liability against JD Workforce. Title I generally defines a covered employer as a person engaged in an industry affecting commerce with fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the relevant year. See 42 U.S.C. § 12111(5)(A); see also Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 365-66 & n.9 (2d Cir. 2000). The Second Amended Complaint alleges at least forty (40) workers employed by "Defendants" collectively, Second Am. Compl. ¶ 28, but does not specify *which* entity employed the requisite number for the statutory period. Because Bingo denies Plaintiffs' joint-employer allegations, the coverage issue should be resolved on a developed record rather than treated as an automatic consequence of default. Defendants do not rely on this threshold issue as their sole ADA defense; it is an additional merits question. However, Defendants have presented sufficient evidence of potentially meritorious defenses for purposes of this motion.

**2. Employer status, hours, compensation, and willfulness on the FLSA and NYLL claims remain fact-intensive and disputed.**

Counts One and Two allege unpaid overtime under the FLSA and NYLL. Although the Court previously held that the earlier pleading adequately alleged wage claims at the Rule 12 stage, that ruling did not establish the truth of the allegations or resolve the amount of hours worked, actual compensation, payroll calculations, good faith, or the identity and scope of each defendant's employer status. Those issues remain merits questions.

Deane's potential individual liability under the FLSA and NYLL turns on the economic realities of the relationship, including operational control. See Irizarry v. Catsimatidis, 722 F.3d 99, 104-17 (2d Cir. 2013). Ownership or corporate title alone is not a substitute for that fact-intensive inquiry. Plaintiffs allege operational involvement; Defendants are entitled to contest those allegations with evidence. The Bingo Defendants' own current Answer denies the pleaded joint-employer and merits allegations. See ECF No. 61. That live dispute is itself enough to demonstrate that there are real merits issues rather than a case in which liability is uncontested apart from a technical default.

**3. The 2025 amendment to NYLL section 198 materially limits the remedy on the frequency-of-pay claim.**

Count Three alleges that Plaintiffs were manual workers entitled to weekly pay under NYLL § 191(1)(a). Even assuming a private claim remains available, the remedy landscape changed materially after this case began. In May 2025, New York amended section 198(1-a) to provide that liquidated damages do not apply to section 191(1)(a) violations where the employer paid wages on a regular payday no less frequently than semi-monthly. See N.Y. Lab. Law § 198(1-a); 2025 N.Y. Laws ch. 56, Part U. For a first violation in that circumstance, the statute limits damages to no more than one hundred percent of lost interest on delayed wages. Id.

The legislation expressly reaches pending actions. Courts applying the amendment have recognized that it limits the once-claimed windfall-style liquidated damages for otherwise fully paid wages. See, e.g., Dudnauth v. A.B.C. Carpet & Home Inc., No. 23-CIV.-1858 (ER), 2026 U.S. Dist. LEXIS 68236, at *5 (S.D.N.Y. Mar. 30, 2026).

The present Order to Show Cause defers damages, but a liability default should not be framed in a manner that obscures the amended statute. If payroll records show a regular semi-monthly or biweekly payday, Plaintiffs cannot recover the former measure of liquidated damages merely because payment was not weekly. This substantial defense to the scope and economic significance of Count Three further supports merits adjudication and, at minimum, must govern any later inquest.

**4. The Court must independently determine Article III standing for the wage-notice and wage-statement claims.**

Counts Four and Five seek statutory damages for alleged violations of NYLL sections 195(1) and 195(3). Article III does not permit a federal court to award statutory damages merely because a required document was missing or inaccurate. Guthrie requires a plaintiff to plead and ultimately establish a concrete downstream injury causally connected to the deficient notice or statement. See 113 F.4th at 307-10.

The Second Amended Complaint attempts to allege downstream consequences, including uncertainty and impairment of Plaintiffs' ability to identify or act on wage issues. See Second Am. Compl. ¶ 91. Those allegations make the standing issue less categorical than in cases alleging only a bare paperwork violation. But default does not admit constitutional standing, and the Court must analyze each named Plaintiff's alleged injury and causal connection independently. See Guthrie, 113 F.4th at 308-10. The issue should therefore be preserved for merits adjudication rather than treated as conceded by the Clerk's entry.

**5. Huerta's NYSHRL accommodation and discrimination claim presents disputed factual issues.**

The Seventh Cause of Action alleges disability discrimination and failure to accommodate under the NYSHRL. The pleading alleges communications involving Deane concerning Huerta's medical restrictions and return to work. Those allegations are contested factual assertions, not an adjudication. The existence of a reasonable accommodation, the essential functions of the work, causation, discriminatory intent, the extent of individual participation, and damages all present merits issues.

Although the defense cannot supply a client affidavit on those subjects while communications remain impaired, Rule 55(c) requires a potentially meritorious defense, not proof sufficient for summary judgment. Restoring the action to the merits will permit those issues to be developed alongside the overlapping employment evidence already being litigated against Bingo.

**6. Putative class and collective liability cannot be established by default without the required certification and opt-in safeguards.**

The Second Amended Complaint pleads both an FLSA collective and a Rule 23 class. See Second Am. Compl. ¶¶ 27-43. To the extent Plaintiffs' requested liability judgment is intended to bind anyone beyond the four named Plaintiffs, it is overbroad. A Rule 23 class does not spring into existence because a defendant defaults; the Court has an independent duty to determine that Rule 23's requirements are satisfied. See Katz v. Prof'l Billing Collections, LLC, 2021 U.S. Dist. LEXIS 111188, at *5 (S.D.N.Y. June 14, 2021).

The FLSA is different but leads to the same limiting principle: persons do not become parties to a collective action unless they affirmatively opt in by filing written consents. See 29 U.S.C. § 216(b); see also Myers v. Hertz Corp., 624 F.3d 537, 542, 555 n.10 (2d Cir. 2010).

In default cases where certification has not been pursued, courts routinely limit judgment to the named plaintiffs or deem unpursued collective/class requests waived. See Singh v. Meadow Hill Mobile Inc., 2021 U.S. Dist. LEXIS 150467, at *1 n. 1 (S.D.N.Y. Aug. 9, 2021)

Thus, even if the Court does not vacate the defaults, any default ruling must be expressly confined to persons properly before the Court and may not establish classwide liability by procedural shortcut.

### D. The Balance of Equities Strongly Favors a Prompt, Conditioned Return to the Merits.

The requested relief is narrow and practical. JD Workforce and Deane ask that the entries of default be set aside and that the Court allow fourteen days after its order to answer the Second Amended Complaint and the Bingo crossclaim. Counsel will continue immediate efforts to reestablish client communications. If those efforts fail, counsel will promptly seek whatever relief is required by the rules governing withdrawal rather than allow the case to drift.

If the Court believes conditions are necessary, it has ample tools short of liability judgment: a firm answer deadline; an accelerated status report; attendance requirements; resumption of mediation; or other case-management relief. Enron expressly permits consideration of lesser measures. 10 F.3d at 96. Such conditions protect the other parties while preserving adjudication on the merits.

## II. PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT SHOULD INDEPENDENTLY BE DENIED OR DEFERRED.

### A. Default Does Not Excuse the Court from Testing Each Cause of Action as a Matter of Law.

Even if the Clerk's defaults were left intact, Plaintiffs still would not be entitled to their proposed judgment automatically.

A default admits well-pleaded facts, not legal conclusions, and the Court must determine whether each claim establishes liability. See Henry, 108 F.4th at 55-56; see also Finkel, 577 F.3d at 84. This Court has denied default relief where that requirement was not met. See Graham v. HSBC Mortg. Corp., No. 18-CIV.-4196 (KMK), 2022 U.S. Dist. LEXIS 77595, at *1, 11-12 (S.D.N.Y. Apr. 28, 2022).

That independent review defeats at least part of the application now: the ADA claim against Deane individually is legally unavailable under Yerdon. It also requires the Court to address constitutional standing under Guthrie, the statutory scope of the section 191 remedy under amended section 198, and the proper scope of any class or collective relief. These are not damages issues that can simply be postponed; they define whether and to whom liability exists.

### B. Adjudicating Liability Against Only the Defaulting Defendants Risks Inconsistent Results in a Joint-Employer Case.

Plaintiffs affirmatively allege that JD Workforce, Bingo, Deane, and Weiss jointly exercised employer functions and are jointly responsible for the alleged wage violations. See Second Am. Compl. ¶¶ 14-26. The Bingo Defendants deny those allegations and remain in the case. See ECF No. 61. A default declaration that JD Workforce and Deane are liable based on the same employment facts could sit uneasily beside a later merits finding that the joint-employer structure, hours, compensation practices, or underlying violations were materially different from Plaintiffs' pleaded version.

Frow does not categorically prohibit every default against one of multiple defendants; Rule 54(b) and modern practice are more nuanced. See Henry, 108 F.4th at 54-56. But Henry also recognizes the continuing need to avoid directly inconsistent judgments where liability is interdependent. Id.

This Court's default procedures likewise require a plaintiff seeking default against fewer than all defendants to explain why an early liability determination is appropriate. In this case, prudence favors either vacatur or deferral until the shared factual predicates can be adjudicated consistently.

## III. THE BINGO DEFENDANTS' CONTRACTUAL-INDEMNIFICATION DEFAULT APPLICATION SHOULD ALSO BE DENIED, AND ECF NO. 90 SHOULD BE SET ASIDE.

### A. The Same Rule 55(c) Factors Favor Vacatur of the Crossclaim Default.

The Clerk's certificate on the crossclaim was entered on August 21, 2026 – only days before the present opposition is submitted. See ECF No. 90. The communication history is the same. There is no showing that Bingo has lost evidence or suffered an inability to litigate its contract claim. And JD Workforce has substantial legal defenses concerning the scope, conditions, and timing of indemnity. Rule 55(c) therefore favors vacatur of ECF No. 90 for the same reasons it favors vacatur of ECF Nos. 80 and 81.

### B. Bingo's Own Crossclaim Pleads Liability for Plaintiffs' Recovery as Conditional on Plaintiffs Prevailing, and the Contract Must Control.

The current crossclaim alleges that beginning in 2018 Bingo and JD Workforce entered into an Employment Agency Agreement under which JD Workforce supplied workers. See ECF No. 61 at 19-20. It alleges that JD Workforce was the sole employer of the workers, was responsible for payroll and legal compliance, and agreed to indemnify Bingo. Id. Those characterizations include legal conclusions concerning the scope and effect of the agreement. A default does not admit legal conclusions, and the written contract – not a pleader's characterization – governs the parties' rights.

The crossclaim's own language also demonstrates contingency.

It alleges: "If the Plaintiffs prevail on their claims against Bingo Defendants and recover monetary or other relief, such recovery will have been caused by reason of JD Workforce's breach of the Agreement." See ECF No. 61 at 21 ¶ 14. That formulation makes the liability for any underlying recovery dependent on events that have not occurred. Plaintiffs have not prevailed against Bingo; Bingo is contesting liability.

New York law distinguishes between establishing a potential right to indemnification and recovering an indemnity payment. Indemnification claims generally do not mature into a right to payment until the indemnitee has sustained the covered loss. See McDermott v. City of New York, 50 N.Y.2d 211, 216 (1980). A court may in an appropriate impleader posture enter a conditional judgment fixing potential indemnity, but actual recovery remains conditioned on satisfaction of the underlying judgment. See McCabe, 22 N.Y.2d at 208; see also Orlikowski, 55 A.D.3d at 1248-49. Accordingly, even if Bingo proves a contractual right, any judgment tied to Plaintiffs' recovery must be expressly conditional rather than an unconditional adjudication detached from the unresolved underlying case.

### C. Any Claimed Duty to Defend or Attorneys' Fees Depends on the Exact Contract Language, and First-Party Enforcement Fees Require Unmistakable Clarity.

The crossclaim also seeks legal fees and expenses. See ECF No. 61 at 21. New York law requires close attention to what the contract actually says; where a non-insurer's duty to defend or reimburse expenses is conditioned on a finding triggering indemnity, forcing an immediate defense or reimbursement can be premature. See Bryde v. CVS Pharmacy, 61 A.D.3d 907, 908 (2d Dept. 2009); see also Williams v. Port Auth. of N.Y. & N.J., 2020 N.Y. Slip Op. 50197(U), at *5 (Sup. Ct. Kings Cnty. Feb. 3, 2020).

There is a separate issue concerning fees incurred prosecuting the crossclaim against JD Workforce. Under Hooper, an indemnity clause that covers third-party claims does not ordinarily shift attorney's fees in litigation between the contracting parties unless the agreement expresses that intent with unmistakable clarity. See 74 N.Y.2d at 491-92. Thus, even if Bingo may ultimately recover covered defense costs from the underlying action, fees for obtaining or enforcing indemnification are not automatically recoverable. The Court should not enter a broad fee-bearing default judgment without construing the actual clause.

### D. The Crossclaim's Employment Allegations Further Counsel Against Default Findings That Could Conflict with the Main Action.

Bingo's crossclaim alleges that JD Workforce was the sole employer and that Bingo exercised no control over the manner, method, or means of the workers' services. See ECF No. 61 at 20. Plaintiffs allege the opposite – that the entities and individuals were joint employers exercising shared control. See Second Am. Compl. ¶¶ 14-26. Bingo's Answer denies Plaintiffs' joint-employer allegations. See ECF No. 61. These competing positions should be tested through evidence, not resolved asymmetrically by defaults that may later collide.

At a minimum, any indemnity ruling should await or be expressly conditioned on resolution of the predicates specified in the Agreement.

## IV. ALTERNATIVELY, ANY DEFAULT RELIEF SHOULD BE NARROWLY LIMITED.

If the Court declines to vacate all three entries of default, the resulting relief should be substantially narrower than the applications suggest.

*First*, the Court should deny Count Six against Deane individually under Yerdon.

*Second*, any Rule 23 or FLSA collective effect should be denied absent the procedures necessary to bind persons other than the named Plaintiffs.

*Third*, the Court should address all defenses concerning Article III standing and the amended section 191 remedy, which are legal limitations not admitted by default.

*Fourth*, without conceding that JD Workforce is bound to any alleged agreement with Bingo, any contractual indemnity tied to Plaintiffs' recovery against Bingo should be made expressly conditional on the contractual trigger and the underlying disposition, and any attorneys' fees should be limited to those authorized by unmistakably clear contract language and supported by proof as well as whether any such fees are reasonable.

A narrow approach is also consistent with Rule 54(b). A liability-only ruling against some parties while the same factual controversy remains active against others should not be treated as a final adjudication capable of generating inconsistent results. The better course remains to set aside the recent entries and put all defendants on a common merits track.

## CONCLUSION

For the foregoing reasons, JD Workforce and Deane respectfully request that the Court: (1) set aside the Clerk's entries of default at ECF Nos. 80, 81, and 90 pursuant to Rule 55(c); (2) deny Plaintiffs' application for default judgment and the Bingo Defendants' application for default judgment; (3) permit JD Workforce and Deane fourteen days after entry of the Court's order to answer or otherwise respond as permitted by the Court; and (4) grant such other and further relief, including reasonable case-management conditions in lieu of default, as the Court deems just, equitable, and proper. In the alternative, Defendants request the narrower limitations described in Point IV above.

Dated: Jamaica, New York
August 28, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

*/s/ Emanuel Kataev, Esq.*___
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*J.D. Workforce, Inc.*
*and Steve Deane*

**VIA ECF**
All counsel of record

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I certify that this memorandum contains approximately 5,410 words as calculated from the text of this word-processing document and complies with the 8,750-word limit set forth in this Court's Individual Rules of Practice.

*/s/ Emanuel Kataev, Esq.*___
Emanuel Kataev, Esq.