UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

JOSE HUERTA, VINICIO MERA, JOSE FLOREZ, and ELVIA BORJA, *individually and on behalf of all others similarly situated,*

Plaintiffs,

-against-

J.D. WORKFORCE, INC., MARAV USA LLC d/b/a BINGO WHOLESALE, HAMWATTIE BISSOON, STEVEN DEANE, and DAVID WEISS,

Defendants.
---------------------------------------------------------------X

**Case No.: 7:23-cv-5382 (KMK) (AEK)**

**DECLARATION OF <u>EMANUEL KATAEV, ESQ.</u>**

I, Emanuel Kataev, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney duly admitted to practice before this Court and a member of Sage Legal LLC, counsel of record for Defendants[1] J.D. Workforce, Inc. ("JD Workforce") and Steven Deane ("Deane") in this action.

2. I respectfully submit this Declaration in opposition to the pending applications for default judgment and in support of the request to set aside the Clerk's entries of default.

3. Except where stated on information and belief or based on the Court's docket, the facts set forth here are based on my personal knowledge.

4. I submit only the limited information concerning attorney-client communications that I believe is reasonably necessary to explain the communication breakdown and protect the clients from immediate default prejudice.

5. I do not disclose the substance of privileged legal advice.

[1] Defendant Hamwattie Bissoon ("Bissoon") was dismissed from this case, was a principal of JD Workforce, and was my primary point of contact at all relevant times.

6. JD Workforce and Deane previously appeared and actively defended this case through my firm.

7. Among other things, we litigated a motion to dismiss and pursued an interlocutory appeal.

8. The present situation is therefore not one in which the Defendants never appeared or never intended to defend the action.

9. Plaintiffs filed the Second Amended Complaint on April 2, 2025.

10. A responsive pleading on behalf of JD Workforce and Deane was not filed.

11. The omission was not intended by me as a strategic concession of liability or an intentional abandonment of the defense.

12. During the representation, my ordinary communications concerning JD Workforce were principally through Bissoon, who is the corporate principals and contact responsible for communicating with me and coordinating the defense.

13. Deane is an employee who I never spoke to, and for whom JD Workforce and Bissoon directed me to defend.

14. Based on the manner in which communications had historically been handled, I understood and expected that material developments affecting Deane would be relayed to him through Bissoon.

15. Over time, communications with Bissoon became increasingly difficult and ultimately materially impaired.

16. I repeatedly attempted to reestablish contact and obtain instructions concerning the litigation.

17. A significant circumstance during this period was a death in Bissoon's immediate family.

18. I understood that Bissoon lost her father-in-law, and was going through a difficult period following his death with her husband.

19. In September 2025, I advised other counsel that I had not heard back from my clients and that there had recently been a death in the family.

20. I continued following up rather than immediately seeking withdrawal because I did not want to abandon clients whom I understood to be dealing with bereavement.

21. By December 2025, the communication problem had persisted.

22. I again advised other counsel that I was continuing to press for a response and that I was reluctant to withdraw while the family was dealing with the death of a family member.

23. I do not offer the bereavement as a categorical excuse for every missed deadline that followed.

24. I offer it as relevant context for how the breakdown in communications developed and why I continued attempting to restore communications rather than immediately ending the representation.

25. On or about January 5, 2026, I sent the clients a written communication explaining that they had been nonresponsive for a substantial period and that, if the nonresponsiveness continued, I would likely be forced to seek leave to withdraw.

26. I asked them to respond so that I could continue defending them.

27. In the spring and summer of 2026, I continued attempting to reach the clients while the parties and mediator attempted to schedule mediation.

28. On June 2, 2026, I advised opposing counsel that my clients were unresponsive, that I would follow up again, and that I anticipated I might ultimately have to move to withdraw, although I did not want to leave the clients without a defense.

29. On or about June 9, 2026, I again communicated to the clients that their continued failure to respond was putting me in a position where I might be forced to seek leave to withdraw.

30. On or about June 15, 2026, after receiving another communication concerning the consequences of nonparticipation, I forwarded the warning to the clients, asked them to take the matter seriously, and asked them to contact me to arrange a call.

31. On or about July 9, 2026, I again warned that if I continued not to hear from them I expected I would have to explain the circumstances to the Court and then seek leave to withdraw.

32. The non-responsiveness regrettably continued.

33. In August 2026, Plaintiffs sought Clerk's Certificates of Default based in part on the failure to answer the Second Amended Complaint.

34. The Clerk entered defaults against JD Workforce and Deane on August 18, 2026 (ECF Nos. 80 and 81).

35. The Clerk later entered a default against JD Workforce on the Bingo Defendants' crossclaim on August 21, 2026 (ECF No. 90).

36. On or about August 21, 2026, I forwarded the default development to Christina Dabie and Steve Dabie and again warned that the next step would be an application for default judgment and that continued nonresponsiveness could require me to seek leave to withdraw.

37. On August 24, 2026, after the Court issued Plaintiffs' Order to Show Cause for default judgment (ECF No. 91), I again forwarded the development to the JD Workforce principals and warned of the seriousness of the situation.

38. In that August 24 communication, I specifically asked the principals to provide me with Deane's direct contact information so that I could discuss the default proceedings with him.

39. I stated that he had a right to know what was happening in the case.

40. I do not presently have a reliable direct contact channel for Deane.

41. Because I had historically relied on Bissoon to coordinate communications concerning the defense and because those principals have themselves been nonresponsive, I have substantial concern that Deane may not have actual knowledge of the current default proceedings or the present posture of the case.

42. If reliable communications with the clients cannot be reestablished, I anticipate that I may need to seek leave of Court to withdraw in accordance with the applicable professional and procedural rules.

43. I am reluctant to seek withdrawal precipitously.

44. JD Workforce is a corporation and cannot appear *pro se*.

45. An immediate withdrawal could therefore leave the corporate defendant unable to defend itself unless substitute counsel promptly appears.

46. In addition, given my concern about Deane's actual knowledge, I do not want the representation to end without making every reasonable effort to ensure that he learns of the proceedings and can protect his own interests.

47. I am therefore continuing efforts to restore communication while asking the Court to set aside the recent entries of default and allow the case to proceed on the merits.

48. If the Court grants that relief, I respectfully request a short, firm period in which to file responsive pleadings and address the representation issues in an orderly manner.

49. I understand the seriousness of the missed responsive pleading and the disruption caused by the communication breakdown.

50. I respectfully submit, however, that the record does not reflect a tactical choice to concede liability.

51. JD Workforce and Deane previously litigated the matter, and I have repeatedly attempted to get the clients reengaged.

52. I further understand that the Court has adjourned the default hearing to September 17, 2026 and set September 14, 2026 as the deadline for opposition.

53. I submit this Declaration so that the Court has a candid record of the circumstances relevant to Rule 55(c) and can consider alternatives to an immediate liability judgment.

54. I respectfully request that the Court set aside the Clerk's entries of default at ECF Nos. 80, 81, and 90, deny the pending applications for default judgment, and permit prompt responsive pleadings on such terms as the Court deems appropriate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 28, 2026, at Forest Hills, New York.

Dated: Forest Hills, New York
August 28, 2026

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.